## NATIONAL SURETY CO. v. MATHESON'S ESTATE.

First Division.   Juneau.   March 3, 1927.

No. 2385–A.

**1. Executors and Administrators ⬡513(8)—Final Account.**

Where a final account of the administrator is filed, and order approving final account is made and entered, which orders payments to be made, *held*, the order is not a final closing of the estate, and the probate court is authorized to hear and determine a petition opening up the whole accounting, though the time for appeal has expired since the final order was entered, and on the hearing may set aside the final order, and require a new accounting of the entire estate.

**2. Executors and Administrators ⬡509(1)—Judgments—Probate Court.**

The final account was filed in the estate, and upon the hearing an order approving the same was entered. No appeal was taken from this order within the time fixed by law. Thereafter the National Surety Company, the surety on the administratrix's bond, filed a petition setting up errors and mistakes and omissions through fraud in the final account. On objection to the ju-

---

⬡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

risdiction of the court to hear and determine same, *held*, the probate court is authorized to open the final account, to vacate and set aside the former account, and require a further accounting under its general equity powers.

**3. Executors and Administrators ☞513(1, 15)—Judgments—Res Judicata—Probate Courts.**

The judgment or decree of a probate court, on the final settlement by an executor or administrator, is conclusive only on matters therein embraced. That which has not been tried cannot be said to be adjudicated. Hence the decree does not conclude as to property incidentally or fraudulently withheld but otherwise it is conclusive as to all items of property entering into the account though omitted. The probate court cannot divest itself of jurisdiction over an executor or administrator by deciding that an account is final as to any matters not included in the account before it; nor is such decree conclusive of matters collaterally recited, but not directly adjudicated.

**4. Executors and Administrators ☞509(3)—Surety on Bond.**

A surety on an administratrix's bond may make himself a party to the settlement of the final account of his principal, and protect his right as surety by contesting the final account, either before or after final account is approved by the probate court.

**5. Executors and Administrators ☞93(1)—Continuing Decedent's Mercantile Business without Authority.**

An administrator, continuing the mercantile business of his intestate without authority of law, is subject to the rule that he is chargeable with all losses which he may have incurred from continuing the business, and must account for all profits accruing from the business.

**6. Executors and Administrators ☞509(3, 5)—Rights of Surety in Final Accounting.**

Where it appears there are omissions of sums paid out by the administratrix for the benefit of the heirs and for the estate, for which the administratrix is entitled to credit, and which, in justice to her surety, with which she is in a semi-fiduciary relation, she should have claimed and submitted for allowance or rejection by the probate court, the account may be reopened and corrected, though the time for appeal from the order settling the final account has expired.

**7. Executors and Administrators ☞391—Profits and Losses in Administration.**

If the property of the estate sells for more than the appraised value, the administratrix is accountable for the excess; if sold for less than the appraised value, if the loss was occasioned without the fault of the administratrix, she is not accountable therefor.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This estate is again before me on the appeal of the National Surety Company, bondsmen of the administratrix of the estate of F. Matheson, deceased, from an order entered by the probate court for Wrangell precinct of this division of the territory, denying the petition of the National Surety Company for an order directing the administratrix to file a further and supplemental report, covering certain matters alleged to have been omitted from her final report of April 26, 1923, which was approved and allowed by the probate court on August 18, 1923.

The petition further alleges that, for a long time prior to the filing of the final account, Mabel Matheson Patterson was the legally appointed guardian of the minor children of deceased; that prior to the filing of the report an attempt was made to appoint John G. Grant as guardian, without discharging Mabel Matheson Patterson; that as to matters occurring in 1923, thereinbefore set forth, the said Patterson, as administratrix, and Grant, as guardian, were represented by the same attorneys; that the interests of said minor heirs and of Mabel Matheson Patterson were benefited by the omission of the matters referred to and detailed; that the same were known to said parties, or could, with reasonable diligence, have been known to them; that they were omitted by mistake or collusion, with the purpose or design that the minor heirs should receive the benefits of said omissions, etc., and that the administratrix had not been discharged.

There has·been very vigorous opposition to the granting of the petition, as shown by the history of the case heretofore, by the attorney for the guardian and by the administratrix, both of whom appeared before the commissioner and probate judge, and raised the question of jurisdiction of the probate court to entertain the petition for a further accounting, basing their principal objection on the ground that the petitioner, as surety, was bound by the account rendered by its principal, and that the account so rendered was received and allowed by order of the probate court long before the petition was filed, and no appeal was taken therefrom. This contention was overruled by me on the appeal from the decision of the probate court sustaining the demurrer to the petition and upholding the contention of the minor heirs and administratrix, and the probate court was directed to entertain the petition.

As stated before, the hearing was had in February, 1926, on the petition and an answer thereto, before the probate judge, who, on March 6th following, rendered his findings and judgment, denying the petition. These findings are in the record. The matter was thereupon appealed to this court, and on presentation of the matter to the court on May 15th, the attorney for the guardian moved to dismiss the appeal, for the reason that neither the transcript nor the order appealed from was before the court. The motion was denied and an order issued, directing the probate court to transmit the original files of the probate court, to be forwarded to the clerk of this court, for the use of the attorneys and the court.

On July 28, 1926, the parties again appeared for a hearing before the court. Objection was made to the taking of testimony under the stipulation, for the reason that the petition does not state facts sufficient to constitute a cause of action against the heirs, or either of them; that this court has no jurisdiction, because the whole matter was tried before the probate court at Wrangell prior to the initiation of this proceeding and settlement; that the National Surety Company was a party to the action, and no appeal was taken from the final decree, and the same is binding on the surety company. Rulings on these objections were reserved and testimony submitted, or more or less relevancy to the issues raised by the petition and answer thereto.

Hellenthal & Hellenthal, of Juneau, for petitioner.
James Wickersham, of Juneau, for respondent.

REED, District Judge. Considering again the objections to the hearing of the petition that the court has no jurisdiction of the person of the administratrix nor the subject-matter of the claims, it is to be noted, first, that the administratrix has never been discharged; and, second, that by the decree itself she, until the order of the probate court is complied with, is not to be discharged. It is true that the probate court treated the report as final. Yet, as appears from the report, other and further matters supplemental thereto were to be presented to the probate court and approved. In other words, the estate has never been finally closed. The probate court retained jurisdiction over the administratrix and had authority to require such further accounting. In fact, further accounting is

necessary before the estate can be regularly closed, for the
reason that the account submitted on April 18, 1923, does not
pretend to state that the estate has been closed, but shows an
estimate of expenses to be incurred by the administratrix sub-
sequently to the amount of $925. Not only this, but there is
no showing that the administratrix has ever paid the amounts
allowed by the probate court to be paid to the creditors. It is
further alleged in the petition that there was omitted from
the final account items chargeable against the administratrix,
or items of property to be credited to her which were omit-
ted by mistake or through fraud or collusion. If this is so, the
probate court is authorized to require a further accounting of
those items under its general equity powers. It is urged also
that there was a decree by the probate court, and that the de-
cree is res judicata and cannot be discharged or falsified by
a motion for further accounting.

I do not agree with this contention. As was said in Woer-
ner on Administration (3d Ed.) par. 506:

"It seems a self-evident proposition that the judgment or decree of
a probate court, on the final settlement by an executor or adminis-
trator, is conclusive only on the matters therein embraced. That
which has not been tried cannot be said to be adjudicated. Hence
the decree does not conclude as to property incidentally or fraudulent-
ly withheld, but otherwise it is conclusive as to all items of property
entering into the account though omitted. The probate court can-
not divest itself of jurisdiction over an executor or administrator,
by deciding that an account is final as to any matters not included in
the account before it; nor is such decree conclusive of matters col-
laterally recited, but not directly adjudicated," etc.

Again in paragraph 504:

"But, even were the accounting or settlement conclusive as to mat-
ters adjudicated, it cannot be conclusive as to matters omitted from
the account, which may therefore be surcharged in subsequent set-
tlements."

It is urged further that the petitioner, the National Surety
Company, being the surety of the administratrix, is bound by
the decree, and cannot surcharge the account submitted by its
principal. I have considered this question somewhat on the
demurrer to the petition, and have again gone over the views
expressed by me in overruling the demurrer, and see no rea-
son to change my opinion. In the case of United States
Fidelity & Guaranty Company v. Greer, 240 P. 343, the Su-

preme Court of Arizona passed upon a similar question. The probate court in that case refused to allow certain items of the administrator's account. The administrator refused to appeal from this decision, and dismissed the appeal started by his attorney. The surety company, the bondsman of the administrator, thereafter filed its petition, setting up its suretyship, that it had not been a party to the proceeding affecting the Greer estate, that certain portions of the judgment and order of the probate court unjustly affected its right and interest, and moved that such portions be modified and set aside. A demurrer to this petition was sustained by the lower court, denying the surety company's rights to appear or question the judgment and order of the court. The Supreme Court, on appeal, says:

"We are satisfied error was committed in denying the appellant the right to question by motion the correctness of the judgment and order against the outgoing administrator. The appellant was not a party to the proceedings concerning the allowance or disallowance of the administrator's account, yet it had a vital interest in the result thereof, because under the general rule any adjudication in such a proceeding, even though the surety be not a party of record, is as binding upon the surety as upon the principal. Doubtless the appellant could have intervened in such proceeding, and appealed from any judgment injuriously affecting its rights; but there would be no reason for its taking such a precautionary step as long as the principal on bond diligently and in good faith did what he could to prevent an unjust judgment from being entered against him and in favor of the estate.

"In this case the administrator, in apparent good faith, insisted that his final account should be allowed as presented, but, when it was not allowed, and, on the contrary, judgment was given in favor of the estate against him, he refused to prosecute it further, and dismissed the appeal started by his attorneys. If, in such exigency, the surety cannot, by motion, make itself a party of record in the case, and thereby secure a footing to demand protection, it is practically without remedy, and could be greatly harmed by the collusive or fraudulent co-operation of an administrator and those representing the estate. We do not mean to intimate that there is anything in this record tending to show collusion or fraud, but to set out what might occur if the law should be declared to be against allowing a surety, after judgment, from ever, for any reason, questioning it by motion filed in the case."

In that case the probate court passed directly upon the item involved in the motion. The surety, after judgment against its principal entered by the probate court, and after its principal had acquiesced in the judgment, petitioned the court to set

the judgment aside and modify it as to certain items which had been passed upon by the probate court. The lower court sustained the demurrer to the petition. The Supreme Court upheld the petition on the ground that the surety was not a party to the judgment or proceedings antecedent thereto. While in a collateral proceeding, as, for instance, an action on the bond, the surety company would be bound by the judgment of the probate court, it is not so when the surety company comes in and petitions to falsify or surcharge the final account. It appears to me that the surety company can question the verity of its principal's account before the court having original jurisdiction, even after the decree is entered settling the account, because it is not primarily interested in the estate, and as such had not been notified to appear on the settlement of the final account. To hold otherwise would foster collusion, if not fraud, between the distributees and the administratrix. To my mind, the petitioner is well within its rights in petitioning to surcharge the account of the administratrix.

Before considering the items specifically alleged in the petition of the surety company as having been omitted unlawfully from the alleged final report, and not passed upon by the probate court, I deem it well to set forth my view of the law where an administrator, without authority, continues the mercantile business of his intestate. An administrator continuing the mercantile business of his intestate, without authority of law, is subject to the rule that he is chargeable with all losses which he may have incurred from continuing the business, and must account for all profits accruing from the business. This is the universal rule applied to all trustees. So in this case the administratrix, continuing the business of her intestate, is personally responsible for all the losses occurring because of the continuance of the business of her intestate without authority. She, however, is entitled to credit for all moneys legitimately and lawfully paid out for the benefit of the estate, or advanced to the heirs, and it does in no way detract from this rule that the money so paid for the benefit of the estate or advanced to the heirs was derived from the business so unlawfully carried on, or from her own funds.

A general examination of the final account submitted in this case, and the decree, in connection with the testimony

submitted at the hearing, shows that there are omissions of sums paid out by the administratix for the benefit of the heirs and for the estate, for which the administratrix is entitled to credit, and which, in justice to her surety, with which she is in a semifiduciary relation, she should have claimed and submitted for allowance or rejection by the probate court. Whether these omissions were deliberate, with the view of increasing the contingent obligation of the surety company to the distributees of the estate, or whether they occurred through a mistaken apprehension of the law, it is not necessary to pass judgment, from the petition and the testimony submitted upon at the present time; but it sufficiently appears, in my thereon, to have authorized action by the surety to seek relief from the final decree and require from the administratrix a further and supplemental account.

Taking up the specific items alleged to have been omitted from the final report, and not passed upon by the decree of the probate judge of August 18, 1923, we find that the first contention of the petitioner is that there should be credited to the administratrix the sum of $4,511.41 in her account, in addition to the sum of $949.05 reported by the administratrix. The basis of this claim is the statement made by the appraisers of the estate that at the time of the appraisement the bills payable of F. Matheson were, at the date of his death, $5,-580.64; that in making up the inventory and appraisement this amount was eliminated, as not properly having place in the inventory of the property of the deceased. These bills payable were omitted to await the presentment of formal claims before being considered by the administratrix. The basis of this contention of petitioner is that the administratrix paid claims to the amount of $5,580.64 against the estate, for which it received no credit, except the sum of $949.05 reported by her in her account.

In the first place, I find that there is no mention in her account that she has paid the sum of $949.05 to the creditors of the estate. The contention of the petitioner is not sound. The method prescribed by law for the settlement of claims against the estate is that an administrator, seeking credit for claims against the estate paid by him, should allow the same upon properly verified vouchers, after approval by the court, and show the payment by receipts or otherwise to the satisfaction

of the court. In the present case, no claims on general account were presented and allowed, except the accounts of the Seattle Hardware Company and the Pacific Net & Twine Company and the National Grocery Company. It was found by this court, on appeal from the probate court, that the sum of $2,670.45 had been paid by the administratrix during the time that she was carrying on the business on these three accounts, and that the sum of $949.05 was still due to the Pacific Net & Twine Company and the Seattle Hardware Company for goods sold the deceased. These accounts were liabilities of the estate, which the administratrix properly paid, and which she should have claimed and received credit for in the sum of $2,670.45. If, after this allowance of these claims, she paid the balance due the claimants—that is, the sum of $949.05—she should be credited with that amount. If she has not paid this balance of $949.05, that amount is due the creditors, and the estate has not been in shape for distribution, for these claims have priority over the claim of the distributees. In the hearing before this court in reference to the claims of the creditors of the estate, the same attorneys who represent the administratrix represent her now, and at such hearing they claimed that the administratrix had paid the full sum due the Seattle Hardware Company and the Pacific Net & Twine Company—that is, the sum of $949.05—and it is somewhat strange that, after making that contention, this item of the amount paid these creditors should not have been presented to the probate court for allowance to the credit of the administratrix.

The second item contended for by the petitioners is that the bills receivable due the estate amounted to $10,312.14, according to the appraisement, and that this was charged against the administratrix, but that such charge was an overappraisement by the appraisers. This contention is based upon the testimony of O'Neill, who testified that, according to the books of the deceased, the accounts receivable were only $5,031.60. The record shows that Mr. O'Neill testified that he examined the ledger accounts of the deceased, and that the amount of $5,031.60 was the total sum of the accounts receivable on February 1, 1919, as shown by the ledger and not paid on February 11, 1919.

I do not think that the contention of the petitioner on this item should be allowed. The appraisers were under oath, and were

presumed to investigate the accounts due the estate, and to have listed the same for collection by the administratrix. Some of the accounts so receivable may have been paid between the 1st of February and the 11th day of February, 1919. If collected by the administratrix for her agents, and not accounted for, she should be chargeable therefor. The testimony is so indefinite in that regard that I do not consider the testimony of Mr. O'Neill as sufficient to overcome the presumption of the verity of the inventory and the appraisement. The trouble in this regard is due to the fault of the appraisers in not listing separately the accounts receivable by the estate and appraising them each separately. In fact, the appraisement in itself is very defective, and should not have been accepted by the probate judge in the form presented. The claim of the petitioner in this regard should be disallowed.

The third contention of the petitioner is that the administratrix had paid out the sum of $4,641.85 for the support and maintenance of herself and children between February 1, 1919, and April 30, 1920, which amount was set forth in the annual report, with vouchers covering the expenditures, and no credit was given the administratrix on this account.

The next and fourth contention is similar to the preceding item, and is a demand for a credit of $1,487.30 for advancements made by the administratrix for the support of the minor heirs between April 30, 1920, and May, 1921. The amounts of these two items are set forth in the annual accounts and appear to have been regularly supported by vouchers. If the administratrix had paid out these sums, and they were regularly allowed by the probate court, the probate court should have passed upon these amounts, and allowed or disallowed them, and, in justice to her surety, the administratrix, if she paid out these amounts, should have claimed them as a credit for her in the administration of the estate. If they were in the nature of advancements to the minor heirs for their support, she should have received credit for them as advancements to the heirs, and they should have been considered by the probate court in ordering a distribution to the minor heirs of their part of the estate. While these semiannual accounts are merely exhibits, for the purpose of enabling the probate judge to determine the claims allowed and the percentage to be paid to the creditors of the estate, yet, in this instance, it seems to me that the probate court should have taken

testimony as to whether or not there should have been an allowance to the administratrix for the amounts advanced by her for the support of the minor children. If she was lawfully entitled to that credit, it would be her duty, with respect to the surety on her bond, to have presented the matter to the probate court for adjustment by it.

Under our statutes, prior to July, 1919, it was provided that, upon the filing of an inventory, the probate judge should set aside for the widow and minor children of the deceased all property by law exempt from execution, to be expended by her for her maintenance and that of her children, and that, if the property exempt should be insufficient for their support for one year after the filing of the inventory, the commissioner might order the administratrix to pay an amount sufficient for that purpose. By the Act of April 22, 1919 (Laws 1919, c. 12) it was provided, as an amendment to sections 1648 and 1649, C. L. A., that the commissioner, upon notice and being satisfied that the expenses of the last illness, etc., have been provided for, should award and set off property of the estate, not exceeding $4,000, to be used and expended for the maintenance of herself and minor children. It is further provided, in addition to the award above mentioned, that the commissioner might make such further reasonable allowance for the maintenance of the widow and minor children during the progress of the settlement of the estate as may be necessary and as he may deem proper. It does not appear, except as shown by the semiannual accounts of 1920 and 1921, that there was brought to the attention of the probate court the necessity of any allowance for the support of the widow and minor children of the deceased until the year 1922, when the management of the estate was taken from the administratrix under the order of the probate court.

Section 476, C. L. A. 1913, provides that the widow of the decedent may remain in the dwelling house of her husband one year, without being chargeable for rent thereof and shall have reasonable sustenance out of the estate for one year. It appears that under this section of the statute, for the period of one year, at least, the widow is entitled of right to have her support, and should be allowed a reasonable sum therefor. It appears from the testimony submitted that from January 28, 1919, to December 22, 1922, three years, the widow and children were supported from the estate. No credit was claimed for this in the final ac-

count of the administratrix, nor was this fact brought to the attention of the probate judge during the period from the appointment of the administratrix up to May 1, 1920, the date of her final account. It appears therefrom that she expended from the funds of the estate $3,641.85 for the support of herself and family, besides advancing from her own funds $1,000 for the support of the children. On May 31, 1921, she reported that she expended for the support of herself and minor children the sum of $1,487.30, and no report of expenditures on that behalf was made until December, 1922, when a regular allowance was made.

Under these statutes, I am satisfied that it was the duty of the administratrix to present to the probate court, for its determination of an allowance, such sums as were reasonably necessary during the periods named for the support of herself and minor children. It is apparent that it was considered that, because of the administratrix's carrying on the business of the deceased during these years, she was not entitled to any allowance for the support of herself and children during that time. I do not think so. If she is chargeable with all loss, and also must account for all profits, in continuing the business, she certainly was entitled to a credit of all sums expended in behalf of the estate and for the support of her children.

In item No. 6 the petitioner claims that the administratrix should have received credit for the income tax of decedent for the year 1918 paid by the administratrix. It is clear that this item of $316.68 was paid to the collector of internal revenue as income tax, and should have been allowed as a credit in the administratrix's account. There is also an item of $40.15, additional tax for the year 1919, due from the estate, paid by the administratrix, for which she should have received a credit, making in all, the sum of $357.73, being the tax assessed for the year 1919 and due from the estate. Whether this tax is the income tax of the decedent, accruing on the death of the deceased, does not clearly appear to me; but it should have been presented by the administratrix and investigated by the probate court, and, if allowable, should have been allowed as a credit to the administratrix. Other taxes paid the collector of internal revenue, accruing after the year 1919, being profits from the continuation of the business, if any, should not be allowed.

7 A.R.—38

The next item is the item of insurance paid by the administratrix. It appears from the testimony that the administratrix paid out the sum of $920 for insurance taken out in the year 1919. It does not appear whether this insurance was taken out wholly on the stock, or partly on the stock, or on the building. Nevertheless, the administratrix had one year in which to settle the estate, and she is entitled to insure both the stock and the buildings during that year in which she was entitled to administer the estate. While the petitioner claims that there should be credited to the administratrix's account the insurance paid for the years 1920, 1921, and subsequent thereto, I do not think the claim is sound. It was the duty of the administratrix to settle the estate as early as possible, and she was entitled to all credit during the statutory year in which she had to settle the estate, or the year in which the claims of creditors should be allowed. It does not appear how much she spent for insurance on the building, and how much she paid for insurance on the stock, and it would be difficult to separate it. I think that all insurance after the year 1919 should be disallowed.

The eighth item in the petition, marked therein as H, refers to a conveyance by the administratrix to the children, of the real estate and 21 shares of stock of the Willson-Sylvester Mill Company. The claim is made by the petitioner that the dower right of the widow in the real estate was reasonably worth the sum of $4,000, and that as the conveyance was made to the minor heirs to recompense them for the loss occurring through the mismanagement of the estate by the administratrix, the administratrix should receive credit for the value of the conveyance. Section 462, C. L. A. 1913, provides that the widow shall be entitled to dower, or the use during her natural life of one-third part in value of all lands wherein her husband died seized of an estate of inheritance. Under our statute (section 594, C. L. A.) it is provided that, when a person dies seized of real property, it shall descend in equal shares to his or her children.

On the death of F. Matheson, the real estate comprising certain lots and buildings, appraised at $5,213.68, descended directly to the children begotten of deceased, and the administratrix had a dower right therein of one-third part in value of the use thereon during her natural life. The claim is made that the value of the dower right is $4,000, which is more than two-thirds of the appraised value of the realty. No testimony was submitted as

to the value of the dower interest of the widow, although it appears that, subsequent to the transfer of her dower interest to the minor heirs, the store building was leased to one Russell, at a minimum rental of $125 a month.   As the item now stands, the administratrix had an unassigned right of dower in the real estate of her husband.   This was a mere chose in action, which was transferable; but, before a right of possession in the realty thereunder could be obtained, it must be admeasured as provided by statute.   Section 464 et seq., C. L. A.

The petitioner contends that there should be an admeasurement of dower under the statute, and the widow credited with the amount thereof, for the reason that, from the consideration shown in the conveyance to the heirs, it appears that the transfer to the heirs was made to partially recompense the minor heirs for losses sustained through the maladministration of the estate.   I do not think that the surety at this time is in a position to demand the admeasurement of the dower right.   It is not a party interested in the lands, as provided in section 463.   Should a judgment be recovered against the surety, because of the maladministration of the estate by the administratrix, and it, in turn, should recover a judgment against her for sums paid out in her behalf, it might be in a position to ask an admeasurement of the dower as a judgment creditor of the administratrix; but it could not do so under present conditions.

As to the transfer of the stock in the Willson-Sylvester Mill Company, I am of the opinion that credit should be given to the administratrix for the sum of $1,050, being one-half of the appraised value of the stock of the mill company.   According to the law of descent of personal property in this jurisdiction, the wife receives one-half of the personal property on the death of her husband.   One-half of the shares of the Willson-Sylvester Mill Company would therefore have passed to her, and she, in turning it over to the heirs, should receive credit for that amount as an advancement to the heirs on account of their claim against the estate.

The next item is $1,814.39, alleged in the petition to have been collected by the guardian on accounts receivable, and, it is claimed by the surety, should be credited to the administratrix. Whether these accounts so collected consisted of accounts of various parties due Matheson before his death, or accounts due the administratrix from sales made while she was conducting the

business, does not appear. She was charged in the inventory with accounts receivable, on the death of the intestate, to the amount of $10,312.15. Probably a large portion of these accounts so charged were collected by her, and have not been accounted for by her. Of these accounts, those that were uncollectible, she should, if she used every reasonable endeavor to collect the same, have credit for. If, however, through her neglect she failed to collect any of them, they should be carried through and charged against her. The accounts receivable, due her while carrying on the business, and collected and paid over to the estate, and the accounts due Matheson prior to his death, and collected and paid out by her, should have been applied to her credit.

There appears to have been no segregation of the accounts, so far as shown by the testimony, and, as far as an examination of the papers discloses, there was no sale of the accounts, though an order was made after the appraisement. It appears from the final report that there was credited to the administratrix the sum of $888.83, the appraised value of the accounts receivable in March, 1923. If the accounts were sold, and the sale approved by the probate court, the administratrix would be bound by the sale price. It appears from the testimony that the accounts came into the hands of the guardian of the minor children, and that he collected on them, up to the time of the approval of the account, the sum of $1,814.89. If these accounts were turned over to the guardian by the administratrix, with authority to realize upon them, the administratrix should have received credit to the amount of the collections made, less a reasonable collection commission.

The petitioner claims in its last item that the administratrix should have received credit for the loss on the sale of the merchandise and fixtures to C. W. Russell in January, 1923. This contention is based upon an inventory and appraisal made of the stock of merchandise in 1921, under the authority of the probate court, and subsequent reports, when the business was conducted under the authority of that court. It appears from the testimony of Russell that in October, 1921, preparatory to taking charge of the business for the estate, he made a full and complete inventory of the stock of merchandise and fixtures; that the fair valuation of the merchandise and fixtures was $23,157.54. Continuing the business up to the time of the sale in December, 1922, he reported a loss of $97.23 only. Consequently, at the time of the sale, the

value of the merchandise and fixtures was approximately $23,-060.31. It also appears that, in negotiating.for the purchase of the property in the fall of 1922, he and one Walker offered the estate the inventoried price for the same. Delays ensued, and the prospective purchasers withdrew the offer; but Russell in January submitted an offer of $12,000, less certain accounts payable, amounting to $3,268.83, thus netting the estate $8,731.71. In striking a balance of the accounts of the administratrix in the decree, she was allowed $12,000 on account of the sale to Russell. This amount is the gross amount allowed her, and not the net amount received by the estate; nor was any credit given her for the difference between the appraised value of the merchandise at the time of the sale and the sale price received by the estate. According to our statute, if the property of an estate sells for more than the appraised value, the administrator is accountable for the excess. If sold for less than the appraised value, if the loss was occasioned without the fault of the administratrix, she is not accountable therefor.

I am of the opinion that the administratrix should have been allowed a credit for the loss growing out of the sale. If the appraisement of Russell was correct, and from his testimony there is every reason to believe it to be, and the value remained to the date of the sale, and the sale was the only method to close up the estate and prevent a further loss, and the sale was fairly made, I see no reason why credit should not have been accorded the administratrix for the amount of the loss. The petition and order of sale of December 22, 1922, alleges that the value of the property to be sold is $19,118.21, exclusive of bills receivable. The order of sale was based upon this statement, under the oath of the administratrix. Being the latest statement under oath of the net value of the property to be sold, I am of the opinion that, if any credit should be allowed the administratrix for the loss on the sale of the property, the credit should be the difference between this statement and the net sale price of $8,713.17, instead of the difference between $23,060.31 and $12,000.

In view of the irregularities in and omissions from the account, I am of the opinion that the final decree should be set aside, and a further accounting had, in which accounting there should be credits which are claimed for the administratrix for the items herein properly allowable, and the account should be surcharged as herein indicated.