(No. 24845.—
ROBERT STRAPPELLI, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

BARNET HODES, Corporation Counsel, (ALEXANDER J. RESA, and LIONEL J. BERC, of counsel,) for appellant.

BARASA, RINELLA & BARASA, (JOSEPH BARBERA, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The question for decision is whether a city which builds and maintains safety islands to protect those waiting for or alighting from street cars from injury by passing vehicles, is under a greater duty to remove snow and ice from such safety islands than from its sidewalks. The Appellate Court for the First District affirmed a judgment of $5000 for personal injuries allegedly caused by the failure of the city to remove snow and ice from one of its safety islands. We granted leave to appeal.

The material facts are not in dispute. The accident from which the suit arose occurred on the afternoon of January

8, 1936, on Western avenue, in Chicago, just north of its intersection with Cornelia avenue. At this place a safety island or concrete platform is located for the convenience of persons waiting for, boarding or leaving street cars. Plaintiff, a student at Lane Technical high school, went to the safety island in question to board a southbound Western avenue street car. The safety island there is approximately 100 feet long, about 4½ feet wide and is about 4 inches above the street level. On its east side are located street car tracks, while vehicular traffic passes on the west. On January 6, snow to the depth of four inches was recorded in Chicago and by January 8 its depth had increased to 4.1 inches. The entire surface of the safety island was covered with ice and snow at a depth of from one to four inches and was very lumpy or irregular, due to many footprints. On the eastern edge of the safety platform there was a slope of solid ice from the middle of the island down to the west rail of the south-bound car tracks. At the time of the accident some twenty-five or more passengers were there waiting to board a street car. Before the car came to a stop the students and others waiting on the safety island started moving toward its rear entrance and it was then that plaintiff slipped under the car and sustained injuries which required the amputation of the middle toes of his left foot. The only conflict in the evidence is as to the depth of the ice and snow and its degree of roughness. It appears that this surface roughness had existed for a period of forty-eight hours prior to the accident.

In a comparatively recent decision, *Graham* v. *City of Chicago*, 346 Ill. 638, this court reviewed at length the conflicting authorities relating to the general liability of cities for removal of snow and ice from streets and sidewalks. We there laid down a general rule applicable to such cases, including the one at bar, in the following language: "What, if any, duty devolves upon a city to remove ice from its sidewalks is a subject of a great variety of opinions, and,

because of this divergence of views, a number of different and contradictory statements of the law have been laid down in the various jurisdictions. However, there is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. [Citing cases.] * * * The decisions in the various jurisdictions upon this question of liability are so varied and numerous that it would be impracticable for us to attempt to analyze them or to harmonize them, but we have reached the conclusion that the reason which underlies the rule exempting cities from liability because of damages from slippery ice is that of necessity. It is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude."

In reviewing the judgment of the trial court, the Appellate Court, largely upon quotations and citations of authority from other Appellate Court opinions rendered prior to our decision in *Graham* v. *City of Chicago, supra,* held the city to a higher degree of responsibility in keeping safety islands free from snow and ice than existed with reference to its streets and sidewalks. Its opinion sustained the judgment against the city by distinguishing it from the *Graham case* with a holding that the facts as to safety islands lacked "the generality of a situation resulting from natural causes." With this view we cannot agree. The snow and ice on the safety island in question accumulated as a result of natural causes and the condition was undoubtedly a general one throughout the city on the day of the injury. Snow when trampled upon by many pedestrians and when subjected to alternate thawing into slush and freezing forms itself, when frozen hard, into irregular mounds which become slippery and difficult at times to walk upon. This condition is gen-

eral during wintertime throughout Illinois. As held by us in the *Graham case,* this prevalent condition produces the reason of necessity which underlies the rule exempting cities in this latitude from liability for injuries on city streets and sidewalks, when the presence of snow and ice is the result of natural causes. The safety island is, in effect, only a cement sidewalk raised above the street level for the use and protection of pedestrians. The view that a greater duty should be imposed upon the city of Chicago to clean snow and ice from its many safety islands than it owes with reference to its sidewalks finds no support in any of the cases called to our attention and is contrary to the reasoning of the *Graham case.* No artificial condition, as in the *Graham case,* caused the irregular formation of slippery ice and snow on the safety island. On the contrary, the same general weather conditions affected the sidewalks of Chicago and the safety island in the same manner. This condition resulted from natural causes beyond the power of the city to prevent or control and required pedestrians, when using safety islands, placed by the city for their protection and convenience, to exercise the same degree of care for their own safety as they would use on the streets and sidewalks under like conditions.

Since no particular reason has been shown which would justify the application of a special rule to the surface condition found to exist on the safety island in question, and no reason has been presented why our holding in *Graham v. City of Chicago, supra,* should either be modified or reversed, the judgment of the Appellate Court cannot be sustained.

The judgments of the circuit court of Cook county and the Appellate Court for the First District, are reversed.

*Judgments reversed.*