Mrs. John C. VANCE, individually and as Guardian Ad Litem for John C. Vance, et al., Appellant,

v.

ESTATE of Charles O. MYERS, Deceased, Appellee.

No. 1447.

Supreme Court of Alaska.

March 13, 1972.

Leroy J. Barker, Anchorage, for appellant.

No appearance for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

CONNOR, Justice.

The central question in this case concerns the liability of an estate for the torts of a trustee, executor, or administrator.

Appellant brought a tort action against the administrator of the appellee's estate. The action was filed shortly before the superior court discharged the administrator, thus terminating the administration of the estate. Appellant moved to set aside the decree of discharge and reinstate the administrator until the tort action could be concluded. Appellant's motion was denied. The issue on appeal is whether the court erred in refusing to set aside its decree of discharge.

Charles O. Myers died in Fairbanks, Alaska, on May 3, 1969. Shortly thereafter Howard E. Holbert was appointed administrator of the estate. By court order Holbert was allowed to operate the business owned by the decedent, Chuck's Corner Bar, in Nenana, Alaska.

On June 1, 1970, Holbert filed a petition for settling final account, distribution and discharge. In an order of July 16, 1970, the court approved the accounting and found that the administrator should be discharged, after paying expenses and making distribution of the estate.

The final distribution, leaving no funds of the estate in the hands of Holbert, was accomplished on August 20, 1970. On August 31, 1970, a request was made by the sole beneficiary of the estate that the administrator be discharged. This request included a statement of satisfaction with the disbursements made by the administrator. On September 22, 1970, the administrator submitted a second supplement to his final accounting and petitioned for discharge. This was granted by order of the superior court on September 25, 1970.

On August 31, 1970, the appellant filed suit against several persons, including Holbert as administrator of the estate of Myers. The complaint alleges that appellant's husband, for whom she is suing as guardian ad litem, was physically injured in an altercation in Chuck's Corner Bar on June 5, 1970. It is alleged that the injuries resulted, in part, from the actions of the administrator and an employee of the administrator in that they served drinks to John Vance, when Vance was already intoxicated. The complaint further alleges that this rendered Vance incapable of caring for his own safety, that the employee assisted in dragging Vance to the street outside the bar after Vance had been beaten by another person in the bar, and that the employee failed to protect Vance from being beaten in the bar while Vance was in a helpless condition. An amended complaint, stipulated by the parties as part of the record, but as yet unfiled, also asserts that Holbert was negligent in failing to obtain liability insurance covering the operation of the bar.

Holbert was served with the complaint on September 6, 1970. A copy of the complaint was sent to the probate master on September 14, 1970. The superior court was aware of the pending tort action at the time it granted the discharge.

Appellant argues that the estate should not have been closed and the administrator discharged while a tort action was pending against it, relying upon Dunn v. Lindsey, 68 N.M. 288, 361 P.2d 328 (1961). But that case is quite distinguishable. There the cause of action was based upon the conduct of the decedent himself, not that of the executor. In the present case the claim relates entirely to the alleged negligence of the administrator in his operation and management of the assets of the estate. We must consider, therefore, whether those assets can be subjected directly to liability for the alleged torts of the administrator. Preliminarily it should be observed that in the area we are treating no distinction exists between a decedent's estate and a trust estate.

Under the traditional rule a trustee, executor, or administrator was normally liable for torts committed by him or his servants in the administration of the trust or estate. But such torts did not result in the imposition of direct liability upon the assets of the trust or estate. Kirchner v. Muller, 280 N.Y. 23, 19 N.E.2d 665 (1939); Brown v. Guaranty Estates Corp., 239 N.C. 595, 80 S.E.2d 645 (1954); Barnett v. Schumacher, 453 S.W.2d 934 (Mo.1970); A. Scott, "Liabilities Incurred in the Administration of Trusts," 28 Harv.L.Rev. 725 (1915). The orthodox view, still adhered to in a great number of jurisdictions, is that the person to whom the trustee has incurred liability in the administration of the trust must bring an action against the trustee personally, but not in his representative capacity. The claimant may not reach the trust estate directly and apply it to the satisfaction of his claim.

The personal liability of the trustee or executor for torts of his agents is now generally qualified, however, by allowing the executor or trustee to obtain reimbursement from the assets of the estate when he is personally without fault. Restatement 2d, Trusts, § 247. If the claim against the trustee is uncollectible, it is generally recognized that the plaintiff may then reach the trust assets to the extent of the trustee's right to reimbursement. Restatement 2d, Trusts, § 268; H. Stone, "A Theory of Liability of Trust Estates for the Contracts and Torts of the Trustee," 22 Colum.L.Rev. 527 (1922). In some jurisdictions, when the trustee's right to reimbursement is clear, the courts have allowed suit against the trustee in his representative capacity, thus avoiding circuity of action. Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499 (1926); Dobbs v. Noble, 55 Ga.App. 201, 189 S.E. 694 (1937); Smith v. Coleman, 100 Fla. 1707, 132 So. 198 (1931).

One of the original principles underlying the basic rule was that the trustee had an obligation to the trust beneficiaries to manage the estate without fault. Trust property should not be impaired or dissipated through wrongdoing of the trustee. This is, of course, a sound principle where the trustee acts outside the scope of his authority. It evolved at a time when the administration of trusts and estates was relatively passive and seldom required active management of a business enterprise. In much of the earlier case law the courts seem to be concerned exclusively with protecting the estate and the beneficiaries from the acts of reckless and improvident fiduciaries. Parmenter v. Barstow, 22 R.I. 245, 47 A. 365 (1900); Birdsong v. Jones, 222 Mo.App. 768, 8 S.W.2d 98 (1928). Little thought seems to have been given to the plight of the tort victim for harms done to him by the operation of a business enterprise.

Where the trustee's wrongful acts or omissions occur within the general scope of his authority to manage trust assets, and more particularly when the trustee himself has no appreciable assets, the impact of the traditional rule has been perceived as unjust. For this reason the

courts have sought mechanisms, described above, by which the claimants in these circumstances could ultimately reach the assets of the estate. Many of the resulting decisions represent only a partial solution to the problem. Circuity of action is still often required, suit being filed first against the trustee, and only when collection against the trustee has been exhausted and proved futile is enforcement allowed against the estate directly. Kirchner v. Muller, supra; Schmidt v. Kellner, 307 Ill. 331, 138 N.E. 604 (1923). Even that procedure assumes that the trustee has a right to be exonerated out of the estate for the liability he has incurred, which is not always the case even when the trustee's tort was committed within the scope of his authority. Reimbursement may be denied to the trustee when he is personally at fault.

A strained, and we think erroneous, approach to the whole problem is exemplified in such cases as Fetting v. Winch, 54 Or. 600, 104 P. 722 (1909). There the executor was in possession of a building which was an asset of the estate, but he was not actively managing it. A suit was brought for death caused by an elevator accident attributable to the negligence of one of the building's janitors, employed by the executor. The court held that the executor could not be found liable individually, as he had not been personally negligent. Neither could the estate be held liable because, not being a legal person, it was incapable of committing a tort. The court refused to impose respondeat superior liability upon the executor because it felt that the doctrine should not be applied in an instance where the executor derived no profit or personal advantage from the enterprise. In other words, the plaintiff would have no avenue of recovery against the business enterprise conducted by means of the building, no matter how clear his cause of action.

The traditional rule and its exceptions have been criticized by recognized scholars and jurists as being inadequate and unfair to the tort creditor. Dean, later Chief Justice, Harlan Fiske Stone pointed out fifty years ago in a salient law review article that the traditional rule was premised upon theories which were untenable. The trustee's right to indemnity should not be the measure of the plaintiff's rights against the assets of the trust, for this leads to uneven results based solely upon the criterion of whether the trustee was or was not personally at fault. The true reason for reaching the assets of the estate should be the policy of casting the economic loss resulting from the trustee's tort upon the estate, rather than upon the tort victim. This would bring the law of trust liability into harmony with the modern doctrine that an economic enterprise should bear the burden of the losses caused by it, including actionable personal injuries which result from its operations. H. Stone, *op. cit.*, 542–545. To the same effect are the penetrating analyses and conclusions found in C. Fulda & W. Pond, "Tort Liability of Trust Estates," 41 Colum.L.Rev. 1332 (1941).

In 1937 the Commissioners on Uniform State Laws proffered one solution to the problem in the Uniform Trusts Act. Section 14 of that act provides that the trustee may be sued in his representative capacity and collection may be had directly from the trust assets if "the tort was a common incident of the kind of business activity in which the trustee or his predecessor was properly engaged for the trust." This provision has been adopted in several states. U.L.A., Uniform Trusts Act (1957). But it is not necessary that a statute be enacted in order to bring this standard into being. The basic rule was the product of common law decision. It can be altered in the same manner.

One of the current reasons advanced for perpetuating the traditional rule is that if the tort claimant is allowed to sue the trustee in his representative capacity, the beneficiaries may not be adequately represented. That is, a conflict can exist between the trustee as an individual and the trustee in his official capacity, for often he will be named a party defendant in both those capacities. Johnston v. Long, 30 Cal.

2d 54, 181 P.2d 645 (1947). But this problem can be minimized by the appointment of a special representative to protect the interests of the estate and beneficiaries when such a conflict between the estate and the fiduciary appears. In re Estate of Gregory, 487 P.2d 59, 63 (Alaska 1971).

Other courts have held that the trustee may be sued in his representative capacity in cases such as the one before us. Miller v. Smythe, 92 Ga. 154, 18 S.E. 46 (1893); Smith v. Coleman, 100 Fla. 1707, 132 So. 198 (1931); Carey v. Squire, 63 Ohio App. 476, 27 N.E.2d 175 (1939). We are convinced this is the right result. It should be recognized that in respect to tort liability a trustee acting within the general scope of his authority can subject the estate to liability, in the same manner as could an agent acting on behalf of an ordinary principal. That the estate lacks legal personality is true. But that factor should not be a roadblock to achieving realistic justice. See commentary, Restatement 2d, Trusts, § 271A, comment a.–c. at 23.

We hold that an administrator, executor, or trustee may be sued in his representative capacity, and collection may be had from the trust assets, for a tort committed in the course of administration, if it is determined by the court that the tort was a common incident of the kind of business activity in which the administrator, executor, or trustee was properly engaged on behalf of the estate. It follows that appellant's action against appellee was proper.

Because we have found that there can be an action against the administrator in his representative capacity, we must now consider whether the superior court has the power to set aside an order discharging the administrator.

While the decree on final account is evidence as to the correctness of the accounting, the statute describing the decree on final account does not state that it is conclusive on this issue.[1]

In the instant case appellant seeks to have the order set aside because her tort claim was never adjudicated in the probate proceedings, and therefore asserts that this mistake should provide a basis for setting aside the order. The record shows that appellant did not receive notice of the decree of discharge until several days after it was an accomplished fact, so her only recourse was the attempt to have the decree set aside.

A final order of a probate court is only effective as to matters that have been adjudicated; a final accounting may be set aside in order to adjudicate an unsettled portion of the administration of the estate. In re Matheson's Estate, 7 Alaska 322, 327–329 (1925); National Surety Co. v. Matheson's Estate, 7 Alaska 582 (1927); Beardsley v. Hall, 291 Mass. 411, 197 N.E. 35, 37 (1935).

An action for damages in tort represents a claim against the estate, and the service of summons on the executor was a sufficient exhibition of the claim. Final settlement of the estate must await settlement of the tort claim. In re Collignon's Estate, 333 Ill.App. 562, 77 N.E.2d 841 (1948).

Appellant has a right to present her claim for injuries against the estate in a court of law. It is not necessary for the appellant to show fraud, mismanagement or mistake on the part of the administrator because her claim was not included in the final account. Until the appellant's claim has been adjudicated it is clear that the estate has not been completely settled. In re Miles' Estate, 262 N.C. 647, 138 S.E.2d 487, 491 (1964); Powell v. Buchanan, 245 Miss. 4, 147 So.2d 110, 112 (1962); Sub-

---

1. "AS 13.30.730 *Decree on final account.* Upon the hearing the court shall give a decree allowing or disallowing the final account, either in whole or in part, as may be just and right. The decree in any other action or proceeding between the parties interested or their representatives is primary evidence of the correctness of the account as thereby allowed and settled."

lusky v. Fudge, 121 Ga.App. 674, 175 S.E. 2d 100, 102 (1970).

While in some of the above-cited cases there was an insurance policy covering the outstanding tort claim, with the policy shown as an asset of the estate, there is no reason why the rule should be altered merely because the decedent or the estate was not insured against the risk asserted in the tort action.

In his memorandum in the superior court in opposition to appellant's motion to set aside the decree of discharge, appellee relied on the fact that the assets of the estate had been distributed prior to the time that appellant served the administrator with summons and complaint in her tort action. This factor should not bar the action of appellant.

Appellant's claim was made known to the executor within the time allowed for presenting a claim under AS 13.30.260. Appellant was also in compliance with AS 13.20.390 [2] because the suit was filed before the discharge of the administrator. Satisfaction of a judgment against the estate after the distribution has become an accomplished fact may present serious problems for the appellant should she prevail in her action. However, we hold, as a matter of law, that she can pursue her remedy against the estate.

We must reverse the denial of appellant's motion to set aside the decree of discharge and to reinstate the administrator until the tort action can be concluded, and we must remand for proceedings consistent with this opinion.

Reversed.

2. "AS 13.20.390 *Time within which actions brought.* An action may be commenced against an executor or administrator at any time after the expiration of six months from the granting of letters testamentary or of administration, and until the final settlement of the estate and discharge of the executor or administrator from the trust, and not otherwise."