DONALD J. LANSING, Ex'r of the Estate of Helen Elizabeth Lansing, Deceased, et al., Plaintiffs-Appellants, v. THE COUNTY OF McLEAN et al., Defendants-Appellees.

Fourth District   No. 13502

Opinion filed January 6, 1977.—Rehearing denied February 14, 1977.

James Walker, of Bloomington, for appellants.

Randall B. Ehlers and Gale W. Saint, both of Bloomington, for appellees.

Mr. JUSTICE REARDON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of McLean County dismissing plaintiffs' complaints in actions for wrongful death and personal injuries arising from an automobile accident. In their complaints, plaintiffs allege that the defendants were negligent in failing to remove accumulated ice from a State aid highway and in failing to post signs warning of the alleged danger. Plaintiffs allege that these failures breached defendants' statutory duties to supervise, construct, maintain and repair the highway pursuant to sections 5—205.5 and 5—401 of the Illinois Highway Code (Ill. Rev. Stat. 1971, ch. 121, pars. 5—205.5, 5—401). Plaintiffs further allege that this breach proximately caused the death of Helen Lansing and the personal injuries sustained by Charles Lansing even though both were exercising ordinary care for their own safety at the time of the accident. The order dismissing the complaints recited that "common law recognizes no duty [on the part of defendants] to remove natural accumulations of ice and snow" from the highway on which the accident occurred.

On December 14, 1972, Helen Lansing, the wife and mother of plaintiffs herein, was a passenger in an automobile driven by her son Charles which was proceeding in an easterly direction along State aid route 24, a part of the county road system of Tazewell and McLean counties. Although the snowfall had apparently been uniform in both counties prior to that date, the Tazewell County highway was clear and free of ice and snow while the McLean County highway was not clear. Upon entering McLean County, the vehicle encountered a sheet of ice which allegedly covered the highway to a depth of one inch. The automobile allegedly swerved out of control on the ice and crashed into a culvert, killing Mrs. Lansing and severely injuring her son Charles.

Donald Lansing, husband of the deceased and executor of her estate, filed this action against the County of McLean and its superintendent of highways, alleging that his wife's death resulted from the defendants' negligence. Plaintiff also sought reimbursement for the decedent's funeral and burial expenses. The decedent's son, Charles Lansing, sued both defendants for damages arising from the personal injuries he suffered in the accident.

The defendants moved to dismiss the action on two grounds: (1) that

they were immune from the suit; and (2) that they had no duty to remove accumulated ice and snow from State aid route 24.

Sovereign immunity is of judicial origin and is a contemporary, although disfavored doctrine founded on the ancient principle that "the King can do no wrong." An early explanation of the doctrine emphasized that permitting suit to be brought against the King was offensive to the concept of royal sovereignty. Later, allowance of suits against the government was recognized as inconsistent with the concept of the "supreme executive power." (Prosser, Handbook of the Law of Torts 970 (4th ed. 1971).) Even later, as the King was replaced by the modern State, the theory was attacked in its entirety. Prosser, at 984 *et seq.*

A constitutional form of sovereign immunity is embodied in the eleventh amendment of the United States Constitution and in section 26 of article IV of the 1870 Illinois Constitution. In recent years, however, the trend of thought has been turning against the doctrine. In this regard, section 4 of article XIII of the 1970 Illinois Constitution abolishes the doctrine except as the General Assembly shall provide.

Our supreme court has abolished the sovereign immunity of local governments (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89; *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, 203 N.E.2d 573; *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill. 2d 362, 220 N.E.2d 161; *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659; *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 282 N.E.2d 437) although our general assembly thereafter attempted to reinstate the tort immunity of local governments by passing the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 1—101 *et seq.*). Recently, however, our supreme and appellate courts have again chipped the edifice of local governmental immunity by liberally interpreting section 9—103 of the Act which concerns waiver of immunity by insurance. (See West, *"Immunity" from the Tort Immunity Act*, 62 Ill. B.J. 496 (1974), and the authorities cited therein.) We do not exaggerate when we say that the field of immunity is in a topsy-turvy state.

Section 5—401 of the Illinois Highway Code (Ill. Rev. Stat. 1971, ch. 121, par. 5—401) provides:

"Subject to the general supervisory powers of the Department under this Code, all highways in the county highway system shall be under the direct control and supervision of the county board of the county in which such county highways are located, and the county board shall repair, maintain and construct such county highways by contract or with its own forces."

A county highway system includes State aid roads (section 2—102 of the

Code (Ill. Rev. Stat. 1971, ch. 121, par. 2—102)), and the duty to maintain these roads is extended to the county and its superintendent of highways by sections 5—205.5 and 5—401 of the Code (Ill. Rev. Stat. 1971, ch. 121, pars. 5—205.5, 5—401).

On the other hand, section 3—105 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 3—105) shields counties and their employees from liability for injuries sustained during use of county highways. Section 3—104(a) of the Act (Ill. Rev. Stat. 1971, ch. 85, par. 3—104(a)) also shields counties and their employees from liability for injuries caused by the failure to provide highway signs warning of dangerous conditions on the roadway. Section 9—103 of the Act, however, contains a waiver provision providing, in pertinent part, that:

> "(a) A local public entity may contract for insurance against any loss or liability which may be imposed upon it under this Act.
> * * *
>
> (b) Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the nonliability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act." Ill. Rev. Stat. 1971, ch. 85, par. 9—103(a), (b).

■■ In the instant case, the county has admitted that it is insured under a contract of public liability insurance and we hold, therefore, that the county has waived its defenses and immunities under the Local Governmental and Governmental Employees Tort Immunity Act. *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.

In dismissing the complaint in the instant case, the trial court correctly noted that Illinois courts have held, as a general rule, that local governmental units are not obligated to remove snow and ice accumulating from natural conditions where the accumulation covers a large geographical area and constitutes a hazard generally known to the public. (*Strappelli v. City of Chicago* (1939), 371 Ill. 72, 20 N.E.2d 43.) A local governmental unit may, however, incur liability for its failure to neutralize or remove an unnatural accumulation of ice or snow as would arise by reason of a defect in a sidewalk (*Jones v. City of Rock Island* (1968), 101 Ill. App. 2d 174, 242 N.E.2d 302), or by reason of an overflow from a skating rink (*Graham v. City of Chicago* (1931), 346 Ill. 638, 178 N.E. 911). In all cases the local governmental unit will not be amenable to

suit unless it had actual or constructive notice of the dangerous condition. *Barker v. City of Rockford* (1926), 239 Ill. App. 528.

In *Strappelli*, a pedestrian preparing to board a streetcar slipped and was injured on the irregular icy surface of a streetcar platform. In reversing a $5000 award for damages incurred by the plaintiff, our supreme court stated that:

> " * * * [T]he same general weather conditions affected the sidewalks of Chicago and the safety island in the same manner. This condition resulted from natural causes beyond the power of the city to prevent or control and required pedestrians, when using safety islands, placed by the city for their protection and convenience, to exercise the same degree of care for their own safety as they would use on the streets and sidewalks under like conditions." 371 Ill. 72, 75, 20 N.E.2d 43.

In *McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d 459, 227 N.E.2d 764, plaintiff's automobile slipped on an icy roadway approaching defendant's track. The vehicle then collided with defendant's train, severely injuring the plaintiff and killing her husband. Defendant's right-of-way extended for 50 feet on either side of the tracks, but the municipality constructed and maintained all but defendant's 4-foot approach on either side of the tracks. In reversing and remanding for a new trial, our supreme court stated:

> " * * * [W]e concur with the trial court's statement that if the only negligence charged was the failure to maintain the area within the entire right of way, 'this court would have granted a directed verdict.' It is clear that the trial court premised this statement on the fact that the railroad, like the municipality, had no duty to remove or otherwise neutralize the effect of natural accumulations of ice and snow from that part of its right of way not encompassed by its approaches, (*Strappelli v. City of Chicago*, 371 Ill. 72,) that the railroad's approaches herein consisted of only a 4-foot extension from the rail, and that the proximate cause of the accident was the slipping and skidding of plaintiff's car on that part of defendant's right of way not encompassed by its approaches." 37 Ill. 2d 459, 469, 227 N.E.2d 764.

■■ Analysis of *Strappelli* indicates that a local governmental unit cannot be liable for generalized natural accumulations of ice that cannot be prevented or controlled. In such cases, the public must exercise reasonable care for its own safety when using the public thoroughfares. Analysis of *McElligott* indicates that *Strappelli* is still viable authority and that a local governmental unit cannot be liable for injuries caused by dangerous conditions beyond its control.

We note that the plaintiffs are not alleging that the defendants have an absolute duty to remove ice and snow from the highway, or that they are insurers of persons who use the highway. Rather, plaintiffs desire to hold McLean County to a standard of conduct similar to the reasonable man standard applicable in a common law negligence action. Imposition of such a standard will permit the jury to weigh the cause of the accumulation of ice and snow, the time the defendants had to warn of the danger and to remove or neutralize the hazard, if any, and the reasonableness of the county's doing so in light of all the circumstances involved.

Section 11—304 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—304) provides:

"Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways." (Ill. Rev. Stat. 1971, ch. 95½, par. 11—304.)

The State Manual provides:

"The Ice on Pavement sign (W8—7) may be placed temporarily in advance of a section of pavement on which ice has formed. This sign is not intended to be used as a warning of general icy conditions on pavement but should be reserved for use at a specific section where ice has formed and adjoining pavement is clear. It should not be permanently mounted and should be removed as soon as the condition has abated." Manual on Uniform Traffic Control Devices for Streets and Highways, December, 1973.

In view of *Strappelli* and *McElligott,* we do not hold that the defendants have a duty to exercise reasonable care in neutralizing the danger from the icy roadway on December 14, 1972. This writer is of the opinion that *Strappelli,* a case decided in 1939, properly fits the circumstances of that time, but that it is ill suited to today's conditions in which governmental units possess the means to neutralize dangerous conditions arising from prolonged accumulations of ice on highways. This writer also feels that *McElligott* does not say that a governmental unit is immune from suit for allowing dangerous conditions to remain on roadways within its control. A majority of this court, however, are of the opinion that this case presents an issue of State-wide importance

involving a long-standing precedent established by our supreme court. This court does not find that imposition of a duty on the defendants to exercise reasonable care in maintaining the highways will be irrational. Our judgment is, however, that such a finding of compelling public policy should be reserved for decision by the supreme court which decided *Strappelli*. This court therefore declines to engage in what could be termed " * * * erratic judicial law making * * *" on matters of State-wide importance. *Cleary v. Catholic Diocese of Peoria* (1974), 57 Ill. 2d 384, 388, 312 N.E.2d 635.

A material question of fact which we cannot answer, but which should be answered by the trial court, is whether the defendants knew or should have known of the allegedly dangerous condition of the highway in time to warn of the danger prior to this accident. We note that the pleadings allege that the defendants negligently failed to remove ice and slush as it accumulated on the highway on December 11 and 12, 1972, two and three days prior to the fatal accident. We also note that the Tazewell County highway was allegedly free of ice at the time of the accident; a safe condition which may have resulted from salting or some other action undertaken subsequent to December 11, 1972, when hazardous road conditions possibly came to the attention or should have come to the attention of the Tazewell and McLean County authorities.

While the plaintiffs do not actually allege that the defendants knew or should have known of the dangerous condition of the highway prior to December 14, 1972, the pleadings allege sufficient facts from which the substance of plaintiff's claim can be made out. (Section 42(2) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 42(2)).) Such facts are for our purposes deemed well pleaded and are admitted as true. (Section 40(2) of the Act (Ill. Rev. Stat. 1971, ch. 110, par. 40(2)).) We liberally construe these pleadings in order to do substantial justice between the parties. Section 33(3) of the Act (Ill. Rev. Stat. 1971, ch. 110, par. 33(3)).

We noted in *Porter v. City of Decatur* (1974), 16 Ill. App. 3d 1031, 307 N.E.2d 440, that section 3—104(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1969, ch. 85, par. 3—104(a)):

> " * * * provides that a local public entity or its employee is not liable for injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs or other traffic regulating signs upon such streets. In the absence of such controls a person reasonably using the street would be obligated to drive according to the usual rules of the road provided by statute. However, subparagraph (b) provides:
>
> > 'Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to

provide traffic warning signals, signs, markings or other devices *unless* such a signal, sign, marking or device was *necessary* to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care.' (Emphasis supplied.)" (16 Ill. App. 3d 1031, 1034, 307 N.E.2d 440.)

We do not decide whether defendants have breached a duty owed to the plaintiff and plaintiff's decedent herein, but we point out that the defendants may at least have owed a duty to warn of the icy road conditions on State aid route 24 on December 14, 1972.

■■ Accordingly, we hold that the plaintiffs have stated a cause of action for failing to warn of a condition not reasonably apparent to a person exercising due care for his own safety. We also hold that the defendant county has waived its immunity by purchasing policies of public liability insurance. We reverse the judgment of the trial court and remand with directions to reinstate plaintiff's complaints in accordance herewith.

Reversed and remanded with directions.

CRAVEN, P. J., and GREEN, J., concur.