**Robert Lee WILHELM, Jr., a minor, by his father and next friend, Robert L. Wilhelm, Plaintiffs,**

v.

**Vida Seaman BAXTER, Executor of the Estate of Vida V. Seaman, Deceased, et al., Defendants.**

**No. S–Civ–74–99.**

United States District Court, S. D. Illinois, S. D.

Sept. 13, 1977.

Thomas F. Londrigan, Londrigan & Potter, P. C., Springfield, Ill., Alex de Saint Phalle, Londrigan & Potter, P. C., Springfield, Ill., for plaintiffs.

Robert E. Gillespie, Gillespie, Cadigan & Gillespie, Springfield, Ill., for defendants.

## MEMORANDUM AND ORDER

J. WALDO ACKERMAN, District Judge.

This is a diversity action brought on behalf of a minor Plaintiff for injuries received when Plaintiff was allegedly attacked and seriously injured by one or more dogs while he was trespassing on property known as the Seaman Estate. The injuries to Plaintiff occurred subsequent to the death of Vida Seaman and her individual conduct prior to death is not alleged as a proximate cause of Plaintiff's injuries. This action seeks recovery against the estate of Vida Seaman and has named Vida Seaman Baxter (the deceased's daughter) as Defendant in her representative capacity as Executor of the estate.

Presently before this Court is Defendant's motion under Rule 56 for summary judgment on the basis that there is no genuine issue of material fact and that as a matter of law the estate is not liable for a tort committed by an executor or the executor's agent. According to Rule 17(b), the question of the capacity in which the representative of a decedent may be sued shall be decided by the law of the forum.

The issues presented are (1) whether an estate can be liable for a tort committed by an executor or the executor's agent in the course of administration of the estate; and (2) whether the estate has waived this defense by purchasing liability insurance with estate funds and having claims paid by the insurance in similar dog bite incidents prior and subsequent to the one in issue. For purposes of analysis the law regarding a decedent's estate and a trust estate is treated similarly.

### Illinois Law Regarding Tort Liability of the Estate

Defendant has urged that it is abundantly clear that an estate cannot be held liable for a tort committed by an executor even though the torts are committed in the

course of administration of the estate. As a result it is urged, the executor is liable only in his personal capacity for injuries resulting from torts that he or his agents commit in administering the decedent's estate. This view has been generally regarded as the majority view in the United States. See Annotations, 44 A.L.R. 637 (1926), 127 A.L.R. 687 (1940); 34 C.J.S. Executors and Administrators § 716, 31 Am. Jur. 2d, Executors and Administrators, § 260.

Since the Illinois legislature has not decided this issue, we must look to the decisions of the Illinois courts. The Illinois Supreme Court has held that a trustee cannot create a lien on the trust estate in favor of a creditor, or charge the trust estate even by his contract, without express authority given him by the instrument creating the trust. *Johnson v. Leman,* 131 Ill. 609, 23 N.E. 435 (1890). This holding was approved without discussion in *Austin v. Parker,* 317 Ill. 348, 148 N.E. 19 (1925), *Equitable Trust Co. v. Taylor,* 330 Ill. 42, 161 N.E. 62 (1928), *Piff v. Berresheim,* 405 Ill. 617, 92 N.E.2d 113 (1950) and *Laegeler v. Bartlett,* 10 Ill.2d 478, 140 N.E.2d 702 (1957).

■ The only reported decision found in which the Illinois Supreme Court dealt with the issue of whether the estate could be sued on the alleged tort liability of the executor or the executor's agent was *Wahl v. Schmidt,* 307 Ill. 331, 138 N.E. 604 (1923). In *Wahl* the court found that "[A]n action against a trustee in his representative capacity is unknown to a court of law, for the law takes no cognizance of the trust relationship or the trust estate. The trust estate can make no contract or commit no tort." The court refused to consider several cases supporting tort liability of the estate because they were decided in jurisdictions in which law and equity had merged. It is doubtful that this procedural objection to suit would be upheld today since the Illinois courts now have jurisdiction over both law and equity. See the Civil Practice Act of 1933, Ill.Rev.Stat. ch. 110, § 125 *et seq.,* amended and supplemented by Laws of 1955 and now Ill.Rev.Stat. ch. 110, § 1 *et seq.*

Aside from the procedural problem, the *Wahl* court reasoned that the estate or trust funds must be kept intact for the beneficiaries, and the executor or trustee should not be allowed to dissipate the trust through negligence or improvidence. Despite this prohibition of direct suit against the estate by an alleged tort victim, the *Wahl* court did allow that the trustee could seek reimbursement out of trust funds.

> [I]f the plaintiff in error, acting with due diligence in the performance of his duties as trustee, through the negligence of his agent or servants has incurred a legal liability to a third person, he is entitled to have the liability borne by the trust estate. The common rule is that trustees are liable only for good faith and common prudence, and that if a loss happens to the trust fund in relation to which they have exhibited this care and prudence they may be allowed for the loss in their accounts. (2 Perry on Trusts, —— 6th ed. —— sec. 914.) The right to indemnity, however, is the right of the trustee, and the fact of his being able to secure indemnity from the estate *does not make the trust estate liable directly to the person injured by the negligence of the trustee's servants or agents.* (Emphasis supplied) *Wahl v. Schmidt,* 307 Ill. 331, 340, 138 N.E. 604, 607 (1923).

As italicized above, the Illinois Supreme Court did not feel a direct action against the estate should be allowed despite the resultant depletion of the estate indirectly through the trustee's indemnification. But the right to reimbursement has led some courts to hold that an estate may be subjected directly to liability for the tort, in order to avoid circuity of action. *Ewing v. Foley,* 115 Tex. 222, 280 S.W. 499 (1926).

■ The harsh effect of the denial of direct action against the estate by injured tort victims is particularly evident where the trustee or executor has insufficient assets which can be reached to satisfy the judgment. This has led to exceptions being recognized by the Illinois opinions. For ex-

ample, in *Wahl, supra* at 340, 138 N.E. at 607 the court noted:

> As was held in *Johnson v. Leman, supra*, in general their only remedy is personal against the trustee. This rule was recognized in *Norton [Hewitt] v. Phelps*, 105 U.S. 393 [26 L.Ed. 1072], but an exception was admitted in cases where the estate is either indebted to the trustee or *would be if he should pay the demand, and the trustee is* insolvent or *non-resident*. In such cases the trust estate may be reached directly *by a proceeding in chancery*. (Emphasis supplied.)

Once again the distinction between law and equity was found crucial. Absent that procedural hurdle it would appear that in cases such as the one now before this Court, where the executor is a non-resident and may have a right to indemnification against the estate, that a direct action could lie against the estate in tort.

The modern trend in the law also favors allowing the injured third party to reach the estate directly if it is equitable for him to do so, even if the claim does not fall within one of the previously recognized exceptions. According to the comments to the Restatement of Trusts Second, § 271A:

> Comment a:
>
> It is coming to be recognized that just as an agent or servant acting within the general scope of his authority can subject his principal to liability, so a trustee *acting within the general scope of his authority* can subject the trust estate, although not the beneficiaries personally, to liability. In a few States it is expressly provided by statute that a trustee is a general agent for the trust property and that his acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal. (Emphasis supplied.) (*See also* the Uniform Trusts Act, § 14.)
>
> . Under this principle the creditor is given a direct claim against the trust estate, enforceable by an action against the trustee is his representative capacity. It is immaterial whether the trustee has committed a breach of trust as a result of which he is indebted to the trust estate.

> Comment c:
>
> Tort. If a trustee in the course of the administration of the trust incurs a liability in tort to a third person, the third person may be allowed to reach the trust estate even though the trustee has no right of exoneration because he has committed a breach of trust either before or after the liability is incurred precluding him from obtaining exoneration out of the trust estate. This is true where the trustee was not personally at fault in incurring the liability, as, for example, where the tort was committed by a servant employed by him in the administration of the trust. It would seem, however, that even if the trustee was personally at fault, the third person should be permitted to reach the trust estate, *if the trustee was acting within the general scope of his powers in administering the trust*. In such a case, of course, the trustee would be under a duty to the beneficiary to indemnify the estate. (Emphasis supplied.)

*See also* Restatement of Trusts Second, § 267.

Several recent cases in other jurisdictions have adopted this Restatement position. A leading case is *Vance v. Myers*, 494 P.2d 816 (Alaska 1972). In *Vance* the Alaska Supreme Court carefully evaluated the original principles underlying the traditional rule of denying direct liability against the estate. Attention was given to the conflicting concerns of keeping the estate intact and compensating the tort victim for harms done by the operations of the estate. The court noted that many decisions circumvented the general rule via indemnification, allowing a claim which is uncollectible from the trustee to be sought directly against the estate. But this was viewed, in *Vance*, as only a partial and unsatisfactory solution to the problem and one which required circuity of action (i. e., first file against the trustee personally, and only when collection against the trustee has been exhausted and proved futile is enforcement allowed against the estate directly. Compare *Wahl, supra*.)

That process also assumes the trustee has a right of exoneration which may not be the case where the tort was not within the executor or trustee's scope of authority and he was personally at fault. But as the *Vance* court pointed out:

> [t]he traditional rule was premised upon theories which were untenable. The trustee's right to indemnity should not be the measure of the plaintiff's rights against the assets of the trust, for this leads to uneven results based solely upon the criterion of whether the trustee was or was not personally at fault. The true reason for reaching the assets of the estate should be the policy of casting the economic loss resulting from the trustee's tort upon the estate, rather than upon the tort victim. This would bring the law of trust liability into harmony with the modern doctrine that an economic enterprise should bear the burden of the losses caused by it, including actionable personal injuries which result from its operations. H. Stone, *op. cit.*, 542–545. To the same effect are the penetrating analyses and conclusions found in C. Fulda & W. Pond, "Tort Liability of Trust Estates," 41 Colum.L.Rev. 1332 (1941).

*Vance v. Myers,* 494 P.2d 816 at 819 (Alaska 1972).

In view of the foregoing, the *Vance* Court held: "[t]hat an administrator, executor, or trustee may be sued in his representative capacity, and collection may be had from the trust assets, for a tort committed in the course of administration, if it is determined by the court that the tort was a common incident of the kind of business activity in which the administrator, executor, or trustee was properly engaged on behalf of the estate." *See also Mees v. Winthrop,* 31 Conn.Sup. 407, 332 A.2d 791 (1974), which adopts the same rationale. Scott in his multi-volume treatise on Trusts also recognizes, along with the drafters of the Restatement of Trusts, Second, that "the trend of the law [is] in the direction of extending the powers of creditors to reach the estate." Scott on Trusts, § 271A, p. 2288.

The Court of Appeals for the Seventh Circuit, applying Illinois law, has held that the trial court committed no error in holding a bank liable in both its individual and in its representative capacity as Executor of an estate for a tort committed in the administration of the estate. *Bailey v. Meister Brau, Inc.,* 535 F.2d 982 (7th Cir. 1976). Illinois state courts have not re-examined the traditional rule in recent years and there is good reason based on the modern trend to believe that they would adopt the Restatement and *Vance* rationales in a case similar to the one before this Court.

■ Problems arise under our federal system where, as here, a change in state law can be anticipated but is not yet authoritatively announced by the state court. Under the *Erie* doctrine this Court recognizes that the state's highest court and the state legislature are the best authority on Illinois law. In deference to those bodies and because a decision is not required I refrain from deciding the substantive law question of whether the estate is directly liable to suit. I prefer to reach the same result on the alternative basis that the alleged immunity has been waived.

*Waiver of the Defense That The Estate is Not Liable For Torts Committed by The Executor*

■ Counsel for the Defendant has represented the estate, the estate's executor in her representative capacity, and the estate's liability insurance carrier from the time of the filing of this claim, a period of almost three years. Despite the passage of time, counsel first raised this defense after jury selection had begun, causing a mistrial. Exhibits and depositions on file show that the estate purchased liability insurance and made similar claims (for injuries to others as a result of dog bites) on that insurance both prior to and subsequent to the incident in question. Under the facts of this case Plaintiff argues that Defendant has waived the defense that the estate cannot be liable. I agree.

■ It is fundamental that parties may waive substantive rules of law, statutes and

even constitutional provisions enacted for their benefit. *Meyer v. Meyer,* 333 Ill.App. 450, 465, 77 N.E.2d 556 (1st Dist. 1948). This right of waiver includes the right to waive both common law and statutory immunity from suit. Illinois courts have held that the purchase of liability insurance by school districts, municipal districts, and charitable institutions has waived immunity insofar as they are covered by liability insurance. *Moore v. Moyle,* 405 Ill. 555, 92 N.E.2d 8 (1950); *Johnson v. Girvin,* 61 Ill. App.2d 47, 208 N.E.2d 894 (1965); *Lansing v. County of McLean,* 45 Ill.App.3d 91, 359 N.E.2d 165 (4th Dist. 1976).

Aside from the procedural, law-equity dichotomy, the Defendant's principal theory given in support of the common law defense of the estate is that the estate or trust funds should remain intact for the beneficiaries and protected from depletion through the tortious conduct of the estate's executor or the executor's agents. With the presence of liability insurance this theory no longer justifies application of the rule.

In the leading case of *Moore v. Moyle,* 405 Ill. 555, 92 N.E.2d 81 (1950), the Illinois Supreme Court allowed an injured plaintiff to recover from a charitable institution insofar as it had purchased liability insurance. In that case the court reviewed the doctrine of charitable immunity and noted that its sole object was the protection of trust funds of a charitable institution from depletion through the tortious conduct of their employees and agents. The court also observed that the doctrine of charitable immunity did not destroy the right of action against a charity, but only provided a defense to that action if trust funds were to be impaired. The court then concluded and held:

> We are of the opinion there is no justification for absolute immunity if the trust is protected, because that has been the reason for the rule of absolute immunity. Reason and justice require an extension of the rule in an attempt to inject some humanitarian principles into the abstract rule of absolute immunity. The law is not static and must follow and

conform to changing conditions and new trends in human relations to justify its existence as a servant and protector of the people and, when necessary, new remedies must be applied where none exist.

From a careful analysis of the many cases, we are of the opinion that the law in Illinois is that the trust funds of charitable corporations are immune from liability for the torts of the corporation's employees and agents. Beyond that, the rule of *respondeat superior* is in effect.

It appears that the trust funds of Bradley will not be impaired or depleted by the prosecution of the complaint, and therefore it was error to dismiss it. . . *Moore v. Moyle,* 405 Ill. 555, 565–566, 92 N.E.2d 81, 86 (1950).

Although the Illinois Supreme Court has abolished the doctrine of charitable immunity in *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 255 (1965), the doctrine of *Moyle* is still applicable to suits against local governmental units. Even though *Molitor v. Kaneland Comm. Dist. No. 302,* 18 Ill.2d 11, 163 N.E.2d 89 (1959) purported to do away with the sovereign immunity of local school districts, the Illinois legislature partially reinstated it by enacting the Local Government and Government Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85 §§ 1–101—10–101. That act permits a municipality, at its option, to elect to waive its immunity from suit by the purchase of insurance. *Id.* at § 9–103. The waiver was construed to be limited to those defenses and immunities provided in the Act. *Kobylanski v. Chi. Board of Ed.,* 63 Ill.2d 165, 347 N.E.2d 705 (1976). See also *Sullivan v. Midlothian Park District,* 51 Ill.2d 274, 281 N.E.2d 659, 663 (1972) and *Lansing v. County of McLean,* 45 Ill.App.3d 91, 359 N.E.2d 165 (4th Dist. 1977).

It is thus clear that Illinois law recognizes the waiver of defenses in situations where the presence of liability insurance abrogates the need or reason for the application of the defense. While, as stated in the previous section, it may be that the better view is to do away with the defense

altogether, it seems clear there is no room for application of a defense where, as here, insurance protects the estate from being diminished. The underlying theory, protection of the estate, has thus been satisfied here while in none of the Illinois cases supporting the defense was there noted the presence of insurance.

By purchasing insurance covering liability of the estate (in her representative, not individual capacity) the executor protected the beneficiaries from depletion of the estate. This protection extends directly to the estate and does not protect the executor individually. The insurance carrier has accepted premiums from estate funds and paid on similar dog bite claims (although those injuries were not as severe) prior and subsequent to Plaintiff's accident. By allowing this action against the estate up to the limit of the liability insurance, I am doing nothing more than letting the insurance be applied for its intended purpose. In discussing the analogous cases of waiver of governmental immunity by the purchase of liability insurance, the Court in *Beach v. City of Springfield*, 32 Ill.App.2d 256 at 261, 177 N.E.2d 436 at 439, (1961) found:

> These cases hold in substance that liability will follow to the extent of insurance coverage for the negligent injury of a person by a public body not otherwise immune to suit. The heart of each of these cases is not founded on a refinement of old decisions but upon the practical proposition that the loss will be sustained by an insurance carrier who accepted the burden of indemnifying the public body and who in return received good and valuable consideration for accepting the risk. It is ludicrous to contend that anyone can enter into an indemnifying contract and then refuse to fulfill the contract against the injured party, contending in substance that there is no basis for the suit for there was no risk to be insured. If a public body is immune for its negligent acts and it sees fit to purchase liability insurance using public funds and an insurance carrier sees fit to accept such public funds where under the law such insurance is not essen-

tial to prevent the misappropriation of public funds for such tortious acts, it would then appear that the insurance carrier should not be able to hide behind the curtain of immunity.

The court in *Beach* went on to hold that "public policy dictates that where premiums are paid for protection out of public funds to protect persons injured as a result of the negligence of the insured, the insurance company should be foreclosed, estopped or prevented from asserting a defense of the sort set forth here." *Id.* at 264, 177 N.E.2d at 440. This same rationale appears applicable to the present case. Thus in view of all the foregoing I find that the estate and the executor in her representative capacity have knowingly and intentionally waived their right to insist on the common law defense up to the extent of the estate's liability insurance coverage.

The motion for summary judgment is denied. The defendant estate, for which the executor is being sued in her representative capacity, may be liable for this tort claim, if so found at trial, at least up to the limits of the liability insurance coverage.