# CHARLESTON.

S. L. HARRIS *et al.* v. C. P. NORTH *et al.*

Submitted March 8, 1916.    Decided March 28, 1916.

1. PARTIES—*Misjoinder of Defendants—Pleading.*
    Misjoinder of defendants in an action of assumpsit is not pleadable as matter of abatement of the action, but is matter of defense under the general issue.  (p. 78).

2. SAME—*Misjoinder—Cure of Error by Verdict.*
    If a plea setting up such misjoinder as matter of abatement is not objected to in any manner by the plaintiff, but, on the contrary, is

replied to and issue is joined thereon, the error is cured by the verdict, under and by virtue of the statute of joefails.   (p. 80).

3.   APPEAL AND ERROR—*Invited Error—Plea in Abatement—Trial.*
Trial of the issue so made separately and preliminarily, as other issues on pleas in abatement are tried, over the objection of the plaintiff, is not reversible error, his failure to object to the plea and his replication thereto having invited and induced the error of the court.   (p. 80).

4.   SAME—*Harmless Error—Pleading—Misjoinder of Defendants.*
If the issue so erroneously made has been fully and fairly heard by the jury and determined by the verdict, the error is harmless. (p. 81).

5.   INTOXICATING LIQUORS—*Sales—Liability for Price—Licensee.*
The statutes regulating sales of intoxicating liquors in this State, before the prohibition laws became effective, did not govern or regulate purchases of supplies of such liquors by retail dealers therein, from manufacturers and wholesale dealers, as to liability for purchase money.   (p. 81).

6.   SAME.
Such statutes did not, by their own force and vigor, make one in whose name a retail liquor license was issued and posted, liable for the purchase money of liquors sold, for use in the saloon for which the license was procured, as a part of the stock of goods, to another person who exclusively owned and conducted the business done under the license and with whom alone the vendor contracted the sale thereof.   (p. 81).

7.   SAME.
Nor did failure of such a licensee to notify persons selling liquors to the real proprietor, of his lack of interest in the business, make him liable to them, under the legal rule making retiring dealers liable for goods sold to their successors, under certain conditions, when notice of the retirement has not been given.   (p. 81).

8.   SAME—*Sales—Ostensible Partner—Liability.*
In such cases, the question of liability on the part of the licensee depended upon the general commercial law imposing liability upon one who has permitted himself to be represented or held out as a partner, in favor of persons who have sold their goods to the firm of which he is represented as being a member, on the faith of the representation and under the belief that the person so represented or held out was a partner of the person to whom the sale was actually made.   (p. 83).

9.   SAME—*Sales—Liability for Price—Licensee.*
Under this rule, the display of the license was a circumstance

tending to lead a wholesale dealer seeing it, to believe the licensee was a partner of the person or persons who owned the saloon and to whom the liquors were actually sold, but upon which he could not hold the licensee liable for the purchase money, if he knew the latter had no interest in the business, or if he did not make the sale or extend the credit under belief that he had.   (p. 84).

Error to Circuit Court, McDowell County.

Action by S. L. Harris and others against C. P. North and others.   Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

*Anderson, Strother, Hughes & Curd,* for plaintiffs in error.

*Harold A. Ritz* and *Ira J. Partlow,* for defendants in error.

POFFENBARGER, JUDGE:

In this action of assumpsit against three defendants, for recovery of a balance due on an account for liquors bought from a wholesale house, for a saloon, two of the alleged partners were absolved from liability on a plea of discharge in bankruptcy.   Before this occurred, the other one interposed a plea of misjoinder, averring that the alleged promises, if any, had been made only by his co-defendants and not by him. All three of them filed a plea denying the partnership and the solvent one, a plea of non-assumpsit.   Issues having been joined on the pleas, the court, on the demand of the solvent defendant, ordered a trial on the plea of misjoinder, regarding it as a plea in abatement, and postponed the trial of the general issue.   The result was a verdict for the defendant, C. P. North, and a judgment of abatement of the action as to him.

The sufficiency of the plea was not challenged by any demurrer, objection to it, or motion to strike it out.   Without denial of its sufficiency, the plaintiffs replied to it generally. The only assignment of error pertaining to it, is based upon the exception to the order of the court requiring disposition of the issue made on it, before trial of the one raised by the plea of non asumpsit, which, was rendered immaterial by the result of the trial of the other, if the assignment of error is untenable.

Only one precedent for such a plea has been found, *Gasquet*

v. *Fisher,* 15 Miss. 313, and the opinion in that case is disappointing and unsatisfactory in that it cites no authority for the conclusion. As to the basis of the ruling, the opinion says this: "It is a rule of pleading, that if two or more are sued together, when by law the action should have been brought against any less number of them only, the misjoinder is pleadable in abatement." We have been unable to find the learned judge's authority for the rule in any text-book or decision, prior or subsequent. In *Stafford* v. *Nutt,* 51 Ind. 535, in which the defendants endeavored to defend in this manner, the court said: "It seems to us that this is a new use of a plea or answer in abatement, a use that could not be made at common law, and can not be under the code practice of this State. If the defendants were jointly sued at common law, and wished to deny joint liability, their course was to plead the general issue, and thus put the plaintiff to the proof of the liability as alleged, failing in which, the plaintiff failed in his action." No decision of this court sustains such a plea. No provision of any statute authorizes it. Though the syllabus in *Urton* v. *Hunter, Harris & Co.,* 2 W. Va., 83, says nonjoinder and misjoinder are matters to be pleaded in abatement, there was no such plea in the case, wherefore the expression is a mere *obiter dictum.* It is quoted in *Rutter* v. *Sullivan,* 25 W. Va., 427, in which likewise there was no plea of misjoinder. In neither case, could the court have given the matter mature consideration. An assumption of identity of nonjoinder and misjoinder of defendants, in legal effect, seems to have been hastily adopted without inquiry or an attempt at verification. This assumption is clearly erroneous. At common law, nonjoinder of defendants was ground of abatement, and, if not pleaded, it was waived. 1 Chitty, Pl. 11 Am. Ed., 4647. Misjoinder of defendants did not have to be pleaded in abatement. When it appeared in the proof under the general issue, it was matter calling for a nonsuit and not ground of abatement. 1 Chitty, Pl. 11 Am. Ed., 44, 45; 15 Ency. Pl. & Pr., 582; 1 C. J. 131 Am. Ency. L. & Pr., 17; 5 Rob. Pr., 72. As abatement and nonsuit do not differ very substantially in legal effect, this rule is manifestly technical. There is really no good practical reason for denying to one improperly

joined as a defendant, right to show his lack of interest and thus to avoid the expense and annoyance incident to a defense on the merits. Unable to have his relation to his co-defendants *quoad* the matter in controversy determined separately and in advance of the trial of the general issue, he is bound to make defense to a claim with which he may not be concerned at all, otherwise than by a false allegation of his relation to it. Nevertheless, to permit him to plead the misjoinder in abatement, would enable him to deny, in a special and restricted form, what is alleged against him. The office of the plea in abatement is to bring to the attention of the court some fact or circumstance not disclosed on the face of the record, which, not absolutely and forever precluding or excluding right of recovery in the plaintiff, defeats the action in which it is set up for lack of jurisdiction, or on account of some privilege or disability. If the plea is sustained, the plaintiff may proceed against part of the defendants, or in another court, or another form of action; or against the same defendant, at a later date. A matter which forever precludes recovery against the party pleading it, should be pleaded in bar. 1 Chitty, Pl., 446, 447. The plea under consideration, as has been observed, brings to the attention of the court no new independent or undisclosed matter. It deals with the subject matter of the principal allegation of the declaration, and responds only partially to it. In other words, it attempts to divide the allegation and deny only a portion of it. Some matters, such as outlawry, alien enemy and attainder, could be pleaded either in abatement or in bar, 1 Chitty, Pl., 11 Am. Ed. 446, but they were not disclosed by the declaration, nor did pleas thereof respond directly to any allegation or effect a division thereof. Hence, the subject matter of this plea does not belong to that class. We are clearly of the opinion that it is not pleadable by way of abatement and that it constitutes mere evidence under the general issue.

On this bad plea issue was voluntarily made and joined by the plaintiffs, wherefore the error involved is not strictly one committed by the court; and the issue so joined and tried was in one aspect completely determinative of the question of liability on the part of North. As there were pleas and issues.

joined thereon, the judgment is not reversible for want of an issue, as in *Stevens* v. *Friedman,* 53 W. Va., 79, *Ruffner* v. *Hill,* 21 W. Va., 152 and other cases. The statute, sec. 3, ch. 134, Code, ser. sec. 4977, makes a verdict cure misjoinder of issue, but does not dispense with the common law requirement of an issue. The same section inhibits reversal for any defect or omission in pleadings, ''which might have been taken advantage of on a demurrer or answer, but was not so taken advantage of.'' Here there was no demurrer to the bad plea. Issue was joined on it and there was a complete development of the only real controversy in the case. To permit the plaintiffs to reverse the judgment on account of the bad plea would violate the statute and give them advantage of their own error.

If the court technically erred in sustaining the motion for a separate and preliminary trial of that issue, the error is manifestly harmless, for the trial as to North's liability for the debt, the existence of which was assumed for the purposes of the trial, was full and complete and exactly the same in character and procedure as if that question had been determined under the general issue. Moreover, the plaintiffs invited the error by their acquiescence in the claim of right to plead misjoinder as matter of abatement. Ordinarily, a party is estopped to complain of errors committed or invited by himself. *Carpenter* v. *Utz,* 4 Gratt. 270; *Warren* v. *Syme,* 7 W. Va., 474, 500; *Vance* v. *Evans,* 11 W. Va., 342; 3 Cyc. 244. Having so acquiesced, the plaintiffs could not consistently deny the character of the issue they made on the plea, by their objection to the trial of that issue first, agreeably to the statutory requirement as to such pleas. Code, ch. 125, sec. 21, ser. sec. 4775.

Lack of any direct pecuniary interest in the saloon or copartnership, on North's part, was asserted and proved by way of defense. He owned the building in which the business was conducted by the other defendants and the state license under which, ostensibly, they sold liquors was in his name and conspicuously posted in the saloon room. It was procured in his name because the owners of the business were aliens, Hungarians, and could not, for that reason, obtain a license in

their own names. Prior to their occupancy of the building, as North's tenants, another person had conducted a saloon in it. On his failure in the business, North took an assignment and transfer of the license for the unexpired portion of the year and Lukacs and Szilagyi bought the stock of goods. On the expiration of the license year, a new license was procured in North's name, but the owners of the stock paid the license taxes. Their predecessor had paid $35.00 a month as rent for a single room. North enlarged the building, more than doubling its length and adding a second story, and the new firm paid him $100.00 a month for the ground floor for awhile, and later $125.00 a month for the entire building. Checks used in payment of bills rendered by the plaintiffs bore "Old Miners Saloon" as the firm name, and were signed, for awhile, "Old Miners Saloon, By Steve Lukacs, M. Szilag-yi" and later "Old Miners Saloon By Lukacs & Szilagyi." On checks used in the business from August 1913 to January 1914, and possibly longer, these parties styled themselves "proprietors." During some portions of their career, they styled themselves "managers," on their stationary. Plaintiffs had no direct dealings, nor even any conversation or correspondence with North. It does not appear that any of them or any representative of theirs knew him or had ever seen him. Their salesman saw his name in the posted license and was told by Lukacs he was interested. On the subject of that representation, the salesman testified, in part, as follows: "I looked around and saw the license in C. P. North's name, and I says to Mr. Lukacs, is Mr. North interested in this business with you, and he said, yes, Mr. North got the license for us, he owns the building, and we can't own a license, for we are not citizens of the United States, we have no credit, and we don't know anybody, or words to that effect." Though North's place of business was just across the street from the saloon and he could have been seen at almost any time, no inquiry was made of him, as to whether he was a partner in the business. Upon the information the salesman obtained at the saloon and ascertainment of North's financial rating in the commercial agencies, the plaintiffs sold the firm liquors and other goods and now claim the right to

hold North for a balance due, amounting to about $1,150.00. Though the bills were not always promptly paid, no demand was ever made upon North for payment, until after the bankruptcy of the firm. In some instances, the salesman immediately drew the cash on checks for as much as $400.00 and $500.00 from the local bank on which they were drawn. In others, he had the bank certify the checks before he remitted them. Objection to the admission of such checks and others styling Lukacs and Szilagyi proprietors, was unsuccessfully made. Other evidence objected to was the testimony of three or four witnesses to the effect that the salesman made inquiries of them as to the financial condition of Lukacs and Szilagyi.

North can not be held merely because the license was in his name. No statute expressly made him liable and protection of creditors of a retail dealer in liquors was not within the spirit or purpose of the regulating statutes. As to criminal or civil liability for unlawful sales, North might have been estopped to deny ownership of the business or the agency of the real owners; and the owners may not have been protected by a license in the name of a stranger. Illegality of the business, known to the plaintiffs, might have precluded right of recovery from the real owners, but that would not have rendered North liable. Their own violation of law would have estopped them from resort to him for payment. Solution of such questions would have turned upon the construction of the statutes and the legislative policy embodied in them. But neither the terms, spirit nor policy of the statute touched the subject matter of this controversy. The relation between a retail dealer and his vendor was a matter as to which the legislature had not expressed its will, wherefore it remained subject to general commercial law. The statutes dealt with the selling and disposition of liquors, not purchases thereof.

Nor can North be subject to the law making a retiring proprietor or partner liable for goods subsequently sold to his successor, for want of notice of his retirement. There is no evidence that he ever owned or conducted the Old Minors Sa-

loon or any other, either individually or jointly with any other person.

These special grounds of liability failing, the controversy is determinable by well known principles of general commercial law. If North permitted himself to be represented or held out to the public or to the plaintiffs as a partner and the plaintiffs extended credit to him on the faith of the representation, he is liable. Otherwise, he is not. The posted license in his name was a representation of interest, which, unexplained, would likely be sufficient. But, if the plaintiffs knew he was not interested or did not extend credit to him on account of the fact, they can not hold him for the debt.

Authority for the correctness of the court's elimination of the testimony to the representation of North's interest in the business, made by Lukacs, need not be cited. The representation was not made in North's presence, and there is no evidence that he ever heard of it, after it was made.

The checks and testimony of witnesses tending to prove the plaintiffs knew Lukacs and Szilagyi were the only proprietors and relied only upon their financial ability and extended credit only to them, were relevant, material, and, therefore, admissible.

At the instance of the plaintiffs, the court gave one instruction submitting hypothetically the only legal proposition upon which they could recover, consistently with the principles here enunciated. It substantially covered the subject matter of another which the court refused. A peremptory instruction to find for the plaintiffs was properly refused. Two others refused were manifestly inconsistent with the principles here stated. For the defendant, the court told the jury North was not an actual partner and could not be held liable, if they believed the plaintiffs knew he was not, even though the license was in his name and they knew it was, and that knowledge of ownership by Lukacs and Szilagyi was information of North's lack of interest in the business. No error in these directions is perceived.

The judgment will be affirmed.

*Affirmed.*