**SABRE JET ROOM, INC., an Alaska corporation, Appellant,**

v.

**K & L DISTRIBUTORS, INC., a corporation, Appellee.**

**SABRE JET ROOM, INC., an Alaska corporation, Appellant,**

v.

**WEST COAST DISTRIBUTORS, INC., a Washington corporation, Appellee.**

Nos. 319, 320.

Supreme Court of Alaska.

Aug. 30, 1963.

Wendell P. Kay, Kay & Miller, Anchorage, for appellants.

L. Eugene Williams, Anchorage, for appellee West Coast Distributors, Inc.

Lynn W. Kirkland, of Kalamarides & Kirkland, Anchorage, for appellee K & L Distributors, Inc.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The basic question for decision is whether one is liable for debts resulting from the purchase of stock for a retail liquor store merely because the liquor license for the store was in his name at the time the purchases were made.

In separate actions, consolidated for trial and for hearing on appeal, the appellees, who are wholesale liquor distributors and are hereinafter referred to as West Coast and K & L respectively, sued the appellant for unpaid amounts alleged to be owing them for liquor sold and delivered by them to the Sabre Jet Liquor Store, a retail packaged liquor outlet in the City of Anchorage.

In a trial by the court sitting without a jury the following facts were established: The appellant, Sabre Jet Room, Inc., was formed in 1953 and engaged in the operation of three businesses out of the same building, namely, a dining room, the Sabre Jet Liquor Store, and a bar or liquor dispensary called the Sabre Jet Room. Not long after the liquor store was opened up, its operation was taken over by Lou Leavitt who continued in business there until 1955 when he became ill and had to leave the state for hospitalization. At about the beginning of 1956 one Johney B. Kearney became the operator of the liquor store under a so-called lease management or employment agreement with the appellant corporation of which he was an officer at the time. This agreement, though in writing, was not sent up with the record.

Since the liquor license for the store remained in the name of the appellant corporation as the licensee, Kearney seems to have been made an officer of the corporation and given the management agreement solely for the purpose of complying with the state liquor law which prohibited anyone other than the licensee from having an interest in the business.[1] Under the agreement between Kearney and the appellant, Kearney assumed and paid some $12,000 in debts incurred by Leavitt during the lat-

---

1. Section 35–4–16(D) ACLA Cum.Supp. 1957 provided as follows:

"No person or persons, other than the licensee, shall have any direct or indirect financial interest in the business for which the license is issued. The licensee shall be solely responsible for the lawful conduct of the business licensed hereunder except as hereinafter provided."

See also In re Alaska Labor Trades Ass'n, 10 Alaska 472 (D.Alaska 1945), wherein it was held that the foregoing statutory provision is not limited to beverage dispensaries but applies to all classes of licensees.

ter's operation of the store; made monthly rental payments of $180 to the appellant for the store, plus an initial lump sum payment of $1,000; and paid the annual liquor store license fee of $1,000. In return the appellant furnished to Kearney space and utilities for the liquor store and permitted him to operate the store as a private business.

During the time that Kearney operated the liquor store, he purchased liquor for sale therein from the appellees West Coast and K & L. While the appellees sold and delivered liquor to both the bar and the liquor store, they always billed Kearney individually for liquor delivered to the store and invoiced that particular liquor to him personally and not to the appellant corporation. Both appellees were receiving payment from Kearney personally for the liquor sold to the store and never made demand upon the appellant to pay for any such liquor until after Kearney abandoned the store about the end of 1958. Apparently Kearney became a credit risk by the spring of 1958 and was then placed on a C.O.D. basis by the appellees. Whenever Kearney paid by check for liquor delivered to the store, he signed the checks "Sabre Jet Liquor Store by Johney B. Kearney."

Hayes Button, president of the appellant corporation, testified that upon formation of the corporation's relationship with Kearney concerning the liquor store he had informed responsible agents of K & L and West Coast that the corporation would not be responsible for Kearney's bills at the liquor store. This was verified by the appellant's bartender, who stated that both appellees knew that the liquor store was a separate business and that he himself had so advised their agents. In their own testimony the agents above referred to did not deny the statements made by Button and the bartender. However, Irving Ziegman, manager and vice-president of K & L, claimed that he could not recall that he had ever been told specifically that Kearney was taking over the operation of the liquor store as his separate business, and that the

appellant would not be responsible for payment for liquor delivered to the stores, while Perretti, an agent of West Coast, testified as follows:

"Q Did you ever have any conversations with Mr. Button that—as he stated on the stand, that you people knew all this?

"A Well, it wasn't knowledge to me if he talked to Fred Thomas [who was West Coast's agent before Perretti but was not a witness at the trial]."

Irving Ziegman also testified that he knew the license for the liquor store was in the name of the appellant corporation when he took orders from Kearney for liquor in 1957–1958 and that Kearney was an officer of the appellant; that he was told that Kearney was taking over the operation of the liquor store but that he made no inquiries of anyone as to the relationship between the appellant and the liquor store during the time that Kearney was operating the store; and that he felt that, since Kearney was an officer of the appellant and the license for the store was in the name of the appellant, K & L could look to the appellant for payment of liquor supplied to the store.

At the conclusion of the trial, the trial judge stated from the bench:

"As far as the Court is concerned, the defendant [appellant] licensee is liable to the liquor distributor who recognizes him as the licensee under the law of the State and sells him liquor. He is authorized to sell him liquor. He's liable and the Court doesn't care what kind of arrangement the defendant [appellant] corporation tries to make with any third person. Not interested in it. As far as the Court's concerned, that licensee is liable and judgment will be entered accordingly. Counsel may present findings, conclusions and judgment."

Written findings of fact and conclusions of law were made and filed for each case.

In them the trial court found that the appellant, Sabre Jet Room, Inc., was the owner of the liquor license for the Sabre Jet Liquor Store and that the appellees sold and delivered goods and merchandise to the store. From these findings the court concluded that the appellant as owner of the license was obligated to pay for the liquor purchased for the business at the store. We are of the opinion that the legal conclusion reached by the trial court should not become a rule of law in Alaska.

There are two opposing rules which have been applied in cases such as the one under consideration. The one rule states that, in the absence of a statute expressly imposing liability, a person is not liable to a wholesale liquor dealer for the purchase money for liquor merely because he owns the liquor license for the establishment where the dealer sold the liquor.[2] The courts which follow this rule reason that the protection of creditors of retail dealers in liquor does not come within the spirit or purpose of purely regulatory or revenue producing liquor license statutes.[3]

The other rule is to the effect that one in whose name stands the license under which a liquor sale business is conducted is estopped to assert that he is not the owner of the business conducted under the license, for the purpose of avoiding liability for goods purchased for the business.[4] This rule is based on the policy that the person who obtains and holds the license for the operation of a liquor business on designated premises must be presumed to be the owner and keeper of the premises as to the general public and persons dealing with those actually conducting the business. Under this rule it is immaterial whether a creditor knew at the time of making sales to the business that the person conducting the business and not the licensee was the owner in fact of the business.[5]

We do not regard section 35–4–16(D) ACLA Cum.Supp.1957 (set out in note 1 in the margin hereof) or the provisions of section 35–4–11 ACLA Cum.Supp.1957 that no one shall engage in the manufacture or sale of liquor without first procuring a license to do so, as imposing any civil liabilities upon the licensee. Civil liability, if any is claimed, must depend upon the general commercial law. Since the legislature has not expressed its will as to the relationship between a retail dealer and his wholesaler, we hereby adopt for Alaska the first of the two rules discussed above and hold that the appellant is not liable to the appellees merely because its name was on the license for the Sabre Jet Liquor Store.

K & L urges forcefully in its brief that since the license displayed in the liquor store was in the name of the appellant corporation and Kearney was an officer of the corporation, as he himself informed K & L's agent Ziegman, there was a direct contract between K & L and the appellant acting through its agent Kearney. The trial court may have had the same thought in mind when it found the facts to be in K & L's case that K & L delivered its goods at the appellant's specific request and upon the appellant's promise to pay, and that Kearney as manager of the liquor store and as an officer and agent of Sabre Jet Room, Inc., ordered delivery of the goods for and on behalf of the appellant. Such findings are merely inferences of the court and cannot stand unless they are based upon evi-

2. Distillers Distributing Co. v. Young, 261 Minn. 549, 113 N.W.2d 175, 178 (1962); General Wine Co. v. Del Nigro, 64 R.I. 103, 10 A.2d 678 (1940); Harris v. North, 78 W.Va. 76, 88 S.E. 603, 605–606, 1 A.L.R. 356 (1916); P. Ballantine & Sons v. Gulka, 117 N.J.L. 84, 186 A. 722 (1936); Cf. Furey v. O'Connor, Sup., 85 N.Y.S. 324 (1903).

3. See cases cited in note 2, supra.

4. John Barth Co. v. Brandy, 165 Wis. 196, 161 N.W. 766, 2 A.L.R. 1513 (1917); and cf. Price v. Adalman, 183 Md. 320, 37 A.2d 877 (1944).

5. John Barth Co. v. Brandy, supra note 4.

dentiary facts.[6] We have searched the record and find therein no facts from which the inferences contained in the findings could reasonably have been drawn.

In view of the foregoing, the findings of fact and conclusions of law of the superior court in both cases are set aside and the judgments entered by the court in favor of the appellees are reversed.

Reversed.

6. See American Tobacco Co. v. The Katingo Hadjipatera, 194 F.2d 449, 451 (2d Cir. 1951), cert. denied, 343 U.S. 978, 72 S.Ct. 1076, 96 L.Ed. 1370 (1952); Boudin v. J. Ray McDermott & Co., 281 F.2d 81, 82 (5th Cir. 1960).