William B. BARTON, Appellant,

v.

Elsie LUND and Herman Schultz,
Appellees.

No. 2726.

Supreme Court of Alaska.

May 13, 1977.

Chancy Croft and David B. Loutrel,
Croft, Thurlow & Loutrel, Anchorage, for
appellant.

Timothy M. Stone, Hagans, Smith &
Brown, Anchorage, for appellee Lund.

Mary Hughes Patch, Hughes, Thorsness,
Gantz, Powell & Brundin, Anchorage, for
appellee Schultz.

Before BOOCHEVER, Chief Justice, and
RABINOWITZ, CONNOR, ERWIN and
BURKE, Justices.

CONNOR, Justice.

In this appeal, we consider whether a
lessor of an establishment serving alcoholic
beverages, who takes no part in the man-
agement or control of the establishment,
may nevertheless be held liable in tort for
conduct occurring therein.

William Barton was injured on December 16, 1972 during an altercation in the Bonfire Lounge in Anchorage. An inebriated patron, Melba J. Shinn, allegedly threw a bottle, which hit Barton in the eye.

Elsie Lund owned the building in which the Bonfire Lounge was located. She leased the premises to Edwin Fletcher, who operated the Lounge. The lease included an option to purchase, which Fletcher exercised on February 5, 1973, after the incident in question. Mrs. Lund had no control over the management of the business.[1]

Pursuant to AS 04.10.180, which requires that all persons having a direct or indirect financial interest in an alcoholic beverage business must have their names listed on the establishment's license,[2] the license for the Bonfire Lounge was issued to Edwin Fletcher, Elsie Lund, and Herman Schultz, Lund's brother. Schultz had no connection with the premises; he merely signed the application for a license as "a brotherly gesture for his sister."

Barton brought this action against Melba Shinn and also against Lund, Fletcher, and Schultz, citing AS 04.15.020(a), which makes it unlawful to serve liquor to an intoxicated person.[3] He alleged that the Bonfire's bartender had served liquor to Melba Shinn while she was intoxicated, and that this had been the cause of his injuries. Lund and Schultz were granted summary judgment on the ground that they had no control over the premises, and hence were in no way responsible for Barton's injuries. Barton has appealed.[4]

Were the common law principle of vicarious liability the only ground relied upon for recovery, we would have no difficulty in affirming the summary judgment. Since Schultz and Mrs. Lund had no control over, or right to control, the bartender who actually served the drinks to Melba Shinn, there is no basis for holding them vicariously liable for his conduct. Restatement (Second) of Agency §§ 219, 220 (1958); 2 F. Harper & F. James, The Law of Torts § 26.3 (1956); see DeVille v. Shell Oil Co., 366 F.2d 123 (9th Cir. 1966); Hobbs v. Mobil Oil Corp., 445 P.2d 933 (Alaska 1968). See also Luth v. Rogers & Babler Construction Co., 507 P.2d 761, 763–64 (Alaska 1973) (scope of employment); Fruit v. Schreiner, 502 P.2d 133, 140–41 (Alaska 1972) (same).

Barton, however, relies on AS 04.10.180, set out in footnote 2, supra. He asserts that this statute makes holders of alcoholic beverage licenses, no matter how remote from the management of the licensed premises they may be, liable in tort for violations of AS 04.15.020(a).

In Sabre Jet Room, Inc. v. K & L Distributors, Inc., 384 P.2d 952 (Alaska 1963), an attempt was made to hold a passive lessor of a liquor business liable for the debts of the business, based on AS 04.10.180. We declined to do so. We examined the rationale for this statute and concluded that it did not impose, in and of itself, any civil liability. "Civil liability, if any is claimed, must depend upon the general commercial law." Id. at 955.

---

1. The lease contained covenants that the premises would not be used for any unlawful purpose and that Fletcher would hold Lund harmless for any violations of laws or regulations and for any tort claims arising out of the business, except for those resulting from Lund's own negligence.

2. AS 04.10.180 reads:

   "No person other than the licensee shall have a direct or indirect financial interest in the business for which the license is issued. The licensee is solely responsible for the lawful conduct of the business licensed under this title except as provided in this title."

3. AS 04.15.020(a) reads in full:

"Sale to minors or intoxicated persons. It is unlawful to give, barter or sell any intoxicating liquors, including beer and wine, to a person under the age of 19 years or to an intoxicated person, and it is unlawful for a licensee to permit the giving, selling, bartering or drinking of any intoxicating liquor within the premises covered by a license to or by either of the forbidden classes, nor shall the licensee permit the drinking of hard or distilled liquors by any person upon the premises covered by his license, unless it is permitted under the classification of his license."

4. Shinn did not answer the complaint. Fletcher answered, but did not move for summary judgment and is not a party to this appeal.

■ We reach the same conclusion here. He hold that the responsibility which AS 04.10.180 casts upon liquor licensees is the responsibility to answer to the criminal sanctions imposed by AS 04.15.100 and to the administrative sanctions of the Alcoholic Beverage Control Board. The purpose of AS 04.10.180 is to prevent evasion of the liquor control statutes and regulations through the creation of hidden financial interests in liquor businesses unknown to the regulatory authorities or to the public. It helps insure that all persons with any financial interest in such businesses are answerable to the Alcoholic Beverage Control Board.[5]

■ In *Robinson v. Walker*, 63 Ill.App.2d 204, 211 N.E.2d 488, 18 A.L.R.3d 1317 (1965), on facts similar to these an attempt was made to hold liable a trustee who held legal title to the land upon which the licensed premises stood, but had no other relation to the operation of the alcoholic beverage business within. Unlike the Alaska statutes, the Illinois statute was a "dram shop act" in the usual sense of that term, explicitly imposing civil liability upon "any person owning" licensed premises upon which liquor is served to a person who then in an intoxicated state injures person or property.[6] The court construed the word "owning" in light of the purposes of the dram shop statute, and held that those pur-

poses would not be furthered by imposing civil liability on a party who had no control over the liquor business.[7]

We are similarly persuaded that as a matter of policy civil liability should not be imposed vicariously on persons who do not have power to control the conduct alleged to be tortious. This is the general common law rule for vicarious liability, as we have noted. The Legislature's desire to prevent the creation of hidden financial interests in alcoholic beverage businesses, reflected in the enactment of AS 04.10.180, does not persuade us that we should depart from the general rule concerning civil liability. Our decision leaves criminal and administrative sanctions available to enforce the policy embodied in AS 04.10.180, but also furthers the belief of the legal system that it is unfair to hold a person civilly liable for that over which he has no control, and which he therefore has no opportunity to prevent.

The situation here is distinguishable from that in *Vance v. Estate of Myers*, 494 P.2d 816 (Alaska 1972). There we held that the administrator of an estate who operated decedent's bar business could be held liable, in his representative capacity, for torts committed by a bartender. The difference is that in *Vance* the administrator actively managed the business enterprise as an incident of which the tortious conduct occurred. In the case at bar appellees had no control

---

5. The dissenting opinion correctly points out, citing section 287 of the Restatement (Second) of Torts, that the statutory criminal and administrative penalty provisions have no effect on the decision whether to impose liability for negligence. Instead, we look to considerations of public policy.

6. AS 04.15.020(a), set out in footnote 3, *supra*, unlike a "dram shop" act does not give a civil cause of action against a liquor-dispensing establishment to a person injured by an intoxicated person. AS 04.15.020(b) specifies suspension or revocation of the liquor license as an administrative sanction for furnishing liquor to an intoxicated person, and AS 04.15.100 makes it a misdemeanor punishable by find or imprisonment.

We note that the United States District Court for Alaska has held that under Alaska law, violation of AS 04.15.020(a) is negligence per se. *Vance v. United States*, 355 F.Supp. 756

(D. Alaska 1973); *see Bachner v. Rich*, 554 P.2d 430 (Alaska 1976); *Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971). The Supreme Court of California has found "dram shop" liability based on a criminal statute similar to AS 04.-15.020(a) (*Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971)), and based purely on the common law without reliance on the statute (*Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719, 726–27, *cert. denied*, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976)). *Contra, e. g., Cherbonnier v. Rafalovich*, 88 F.Supp. 900, 12 Alaska 634 (1950) (Alaska law). *See generally* Annot., 75 A.L.R.2d 833 (1961 & Supp.1975).

In view of our disposition of this case, we express no opinion on this question.

7. Annot., 18 A.L.R.3d 1323 (1968), discusses a number of cases involving various factual circumstances from which this "control" rule can be generalized.

over or interest in the beverage dispensary business which was the source of appellant's injuries.

We hold that in the circumstances of the case at bar liability does not extend to persons in the position of appellees.

The superior court's entry of summary judgment in favor of Lund and Schultz is affirmed.

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, dissenting.

Mr. Barton alleges that he was injured as the result of a violation of AS 04.15.020(a) which makes it unlawful to serve liquor to an intoxicated person. AS 04.10.180 states unequivocally that "[t]he licensee is solely responsible for the lawful conduct of the business licensed under this title except as provided in this title." Since according to the allegations in the complaint Mr. Barton was injured because the beverage dispensary was not lawfully conducted, the statute would seem to make the licensees responsible. Mr. Schultz and Elsie Lund are admittedly licensees, but seek to escape responsibility for Mr. Barton's injury by contending that AS 04.10.180 applies only to criminal sanctions. The majority would read into the language in question that the licensee is solely responsible under criminal law, alone, for the lawful conduct of the business. No such restriction is to be found in the statute.

While it is true that specific criminal penalties are prescribed for violation of AS 04.15.020,[1] there is nothing set forth in that section or in the Alaska Alcohol Beverage Control Act which indicates an intent on the part of the legislature to exclude civil liability.

I agree with the Restatement (Second) of Torts § 287 (1965) that:

A provision for a penalty in a legislative enactment . . . has no effect upon liability for negligence unless the penalty is found to be intended to exclude it.

In *Vance v. United States*, 355 F.Supp. 756 (D. Alaska 1973), Judge Plummer held that a violation of AS 04.15.020 could be a basis for imposing civil liability. He found that "the statute unquestionably is designed at least in part to protect against personal injuries caused by intoxication." 355 F.Supp. at 759. While *Vance* did not deal with the vicarious liability of a licensee presented by AS 04.15.180, I see no more reason to limit this latter section to criminal sanctions than the section making it unlawful to sell liquor to minors or intoxicated persons.

Nor do I find that the case of *Sabre Jet Room, Inc. v. K & L Distributors, Inc.*, 384 P.2d 952 (Alaska 1963), requires a contrary holding. In that case, the court was concerned merely with contractual liability. The evidence indicated that wholesale liquor concerns extended credit to the operator of the beverage dispensary after being advised that the corporate licensee would not be responsible for his bills. *Sabre Jet*

---

1.  AS 04.15.100 specifies:

    *Penalties for violation of title or municipal ordinance.* (a) A person who violates any provision of this title other than § 80 of this chapter is guilty of a misdemeanor, and upon conviction is punishable by imprisonment of not more than one year, or by a fine of not more than $500. Each violation is a separate offense.

    (b) Upon conviction of a licensee for a violation under (a) of this section, or for violation of a municipal ordinance adopted by a municipality in conformity with § 70 of this chapter, the judge having jurisdiction shall send a notification of conviction together with a certified copy of the record of conviction to the board. The board may, upon the direction of a majority of its members, thereupon suspend the license as hereinafter provided for the first and second violations and upon a third violation may revoke the license and declare the bond forfeited. For the purpose of this section, the terms "second violation" and "third violation" include only those violations which occur within five years of the first violation, but are not limited to repeated violations of the same statutory provision or municipal ordinance.

    (1) First violation. The license of the premises involved may be suspended for not less than 10 nor more than 45 days.

    (2) Second violation. The license of the premises involved may be suspended for a period of not less than 30 days nor more than 90 days.

*Room* cannot be regarded as authority for denial of civil liability for tort arising out of the unlawful operation of a beverage dispensary. There was no contention in *Sabre Jet Room* of an unlawful operation. Thus, AS 04.10.180 specifying responsibility of the licensee "for the lawful conduct of the business" was not applicable.

Although in *Morris v. City of Soldotna*, 553 P.2d 474, 477 (Alaska 1977), we concluded that it was inappropriate to undertake judicial expansion of the Safe Place to Work Act or the General Safety Code so as to provide for an action for civil damages to an injured workman for harm resulting from breaches of the Act or Code, we stated:

> However, nowhere in either the statute or the regulations can there be found authorization for a claim for relief and award of civil damages to an injured workman for harm resulting from the breach of the Act or General Safety Code. Of course, the fact that a private tort remedy is not specifically created by the terms of the Act is not, by itself, dispositive. In some instances a court may conclude that the legislature has impliedly authorized a private remedy, or that a civil action sounding in tort is necessary to protect fully the person for whose benefit the legislation was enacted. (citations omitted)

The Safe Place to Work Act and General Safety Code do not have language similar to that in AS 04.10.180 specifying responsibility of the licensee.

It seems to me that the general framework of the alcohol beverage legislation gives no grounds for a restrictive non-literal construction of the provision which makes the licensee responsible for lawful conduct of the business. The conduct of a beverage dispensary affects a substantial public interest. Much of Alaska's crime and physical injury results from improper use of alcoholic beverages.[2] Under these circumstances, it seems more logical that

the state intended what it said in enacting AS 04.10.180, namely to make licensees responsible for unlawful conduct of the business. It is quite likely that a licensee may be the only financially solvent person to whom an injured person may look for recovery. The statute should not be construed so as to permit a licensee to stand behind the shield of some arrangement whereby a third person is given management of the business.

In *Fruit v. Schreiner*, 502 P.2d 133, 138–43 (Alaska 1972), we discussed what we believed to be the philosophical basis for vicarious liability. Although we were commenting on common law rather than statutory liability, we believe that the considerations which we enunciated in *Fruit* are particularly applicable in indicating a literal construction of AS 04.10.180:

> "Scope of employment" as a test for application of *respondeat superior* would be insufficient if it failed to encompass the duty of every enterprise to the social community which gives it life and contributes to its prosperity. . . . The basis of *respondeat superior* has been correctly stated as "the desire to include in the costs of operation inevitable losses to third persons incident to carrying on an enterprise, and thus distribute the burden among those benefited by the enterprise." (citation omitted)[3]

The licensee, whether a landlord or otherwise, is benefited by the enterprise. He is able to protect himself from liability by means of insurance, and the extra cost of doing business may be reflected in the price of the product. It seems to me that the legislature intended the licensee to assume responsibility for injuries resulting from unlawful conduct of the business rather than to place that burden on the injured person in the event that the manager of the business lacks financial responsibility. I, therefore, would reverse the summary judgment granted in favor of the licensees by the trial court.

---

2. *See Peter v. State*, 531 P.2d 1263, 1268–69 (Alaska 1975).

3. *Fruit v. Schreiner*, 502 P.2d at 140–41.