Julieann K. ALESNA, Appellant,

v.

Henry LeGRUE and Etta LeGrue, Appellees.

No. 4406.

Supreme Court of Alaska.

Aug. 8, 1980.

Gerald W. Markham, Kodiak, for appellant.

Warren C. Colver, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

■ This is an appeal from a summary judgment dismissing a complaint against Henry and Etta LeGrue, licensees of The Beachcombers, a Kodiak restaurant and bar. The superior court held that the Le-Grues were not vicariously liable for acts of employees on the premises. We conclude that the LeGrues may be held civilly liable for violations of Alaska's liquor laws, and in so holding, overrule our decision in *Barton v. Lund*, 563 P.2d 875 (Alaska 1977).

On July 13, 1974, Chris Peterson was driving an automobile while allegedly intoxicated when he collided with a motorcycle on which Julieann Alesna was riding as a passenger. Alesna suffered severe physical injuries as a result of the accident. Earlier in the evening, Peterson had been drinking at The Beachcombers. In her complaint, Alesna alleged that employees of The Beachcombers had "intentionally or negligently" served alcoholic beverages to Peterson while he was intoxicated, in violation of AS 04.15.020(a),[1] and "intentionally or negligently" failed to take adequate precautions to prevent Peterson from operating his vehicle.

Alesna named four defendants in her complaint: Henry and Etta LeGrue, who were named as licensees on the Alcoholic Beverage Control Board's liquor license, and James A. Williams and Queen of the North, Inc., an Alaska corporation. Williams and Queen of the North were in the final process of buying The Beachcombers from the LeGrues at the time of the accident, and were awaiting transfer of the liquor license.[2] Williams and the corporation were actually operating the premises after May 6, 1974, when the LeGrues left Alaska for Bellingham, Washington.

Alesna's claim against the LeGrues is predicated on a theory of vicarious liability. She claims that liability flows from Williams and Queen of the North and their employees to the LeGrues on either of two possible theories. First, she argues that the LeGrues continued to have a right of con-

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. AS 04.15.020(a) provides in part: "It is unlawful to give, barter or sell any intoxicating liquors, including beer and wine . . . to an intoxicated person . . . ."

2. We had occasion to decide another aspect of this transaction in *Queen of the North, Inc. v. LeGrue*, 582 P.2d 144 (Alaska 1978). The LeGrues foreclosed on a deed of trust and reacquired the property from Queen of the North about a year after the original sale.

trol over the manner in which the business was operated. Alternatively, she contends that AS 04.10.180 [3] creates civil liability of a licensee for the conduct of employees of the beverage dispensary.

Appellant concedes in her brief that she could not produce any factual evidence that the LeGrues exercised actual control after May 6, 1974. Her contention is that under the agreement signed by the buyers and sellers the LeGrues retained an implied right of control. [4]

On May 1, 1974, the LeGrues prepared a warranty deed, bill of sale and application for transfer of the liquor license. On May 6, 1974, the parties signed a "managerial agreement" which allowed the buyers to operate the premises until closing and approval of the transfer of the liquor license. Paragraph 3 of the agreement provides:

> 3. Manager agrees to be responsible for all costs and expenses incurred after this date including loan payments and in return shall be entitled to retain all revenues and receipts taken in from the operation of the business hereafter, and shall manage the business and assume full responsibility therefore [sic] from and after this date.

The remaining provisions deal with an escrow deposit and damage remedies in the event that either side breaches the sale agreement.

The appellant has not pointed to any provision in the agreement which would allow the LeGrues to retain control over the premises. Rather, she argues that the agreement does not contain any affirmative provisions restricting control. In his memorandum decision, the trial judge stated that the LeGrues "retained only a security interest to assure payment of the balance of the purchase price."

Although the meanings to be given the words of a contract are treated in the same manner as a question of law, *Day v. A & G Construction Co.*, 528 P.2d 440, 443 (Alaska 1974), and on appeal we need not defer to the judgment of the trial judge, we do not think that there was any error in the trial judge's interpretation of the agreement. Paragraph 3 of the agreement plainly gives all operational control to Williams, and Alesna conceded that she could produce no evidence of such control by the LeGrues. Consequently, vicarious liability cannot be predicated on control by the LeGrues over operations by Williams and Queen of the North.

An evaluation of Alesna's second argument, that AS 04.10.180 creates a private right of action against a licensee for the conduct of employees of the beverage dispensary, requires that we reconsider our decision in *Barton v. Lund*, 563 P.2d 875 (Alaska 1977). In *Barton*, the names of three people appeared on a liquor license: Elsie Lund, the lessor of a building containing a lounge; Herman Schultz, her brother; and Edwin Fletcher, the lessee of the lounge. The plaintiff sued all three licensees after an intoxicated patron struck him with a bottle. A majority of the court concluded that the prohibition against serving an intoxicated person found in AS 04.-15.020(a) and the duty to name all persons

---

**3.** AS 04.10.180 provides:

*Financial interest and personal superintendence.* No person other than the licensee shall have a direct or indirect financial interest in the business for which the license is issued. The licensee is solely responsible for the lawful conduct of the business licensed under this title except as provided in this title.

**4.** The Restatement (Second) of Agency § 220(1) (1958) (emphasis added) provides:

A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or *right to control.*

The right to control and vicarious liability were considered in the context of independent contractors in *Morris v. City of Soldotna*, 553 P.2d 474 (Alaska 1976) (finding no right to control) and recently in *Hammond v. Bechtel, Inc.*, 606 P.2d 1269 (Alaska 1980) (finding that possibility of such control existed).

with a financial interest in an establishment as licensees found in AS 04.10.180 did not create an implied private right of action against a licensee having no power to control the business for violations of the statute. A motion for summary judgment dismissing Elsie Lund and her brother was affirmed because they exercised no degree of control over the lounge, although they were named as licensees.

Alesna urges that *Barton* can be distinguished from the present case. The essence of her argument is that in *Barton* the two licensees who were dismissed were never active in operating the business, whereas here the licensees, who formerly were active in operating an establishment, have attempted to contract away their liability. In *Barton*, at least one licensee remained responsible, whereas here no licensee would be responsible. Although there is some merit to this distinction, we believe that it makes more sense to overrule *Barton* entirely rather than attempt to limit it.

AS 04.10.180 states that the "licensee is solely responsible for the lawful conduct of the business licensed under this title except as provided in this title." Alesna alleges, in part, that she was injured as the result of the unlawful service of liquor to an intoxicated person. The statute would therefore seem to require that the licensee be responsible for such an injury in the event that Alesna sustains her burden of proof.

In *Barton*, a majority of this court concluded that AS 04.10.180 was limited to responsibility to answer to criminal penalties and to administrative sanctions of the Alcoholic Beverage Control Board, and that civil liability should not be imposed on licensees who do not have the power to control the conduct alleged to be tortious.

The rationale for the majority's holding was twofold: first, that the purpose of AS 04.10.180 was merely to prevent hidden financial interests in alcoholic businesses; and second, that it was unfair to hold a person civilly liable for acts over which the person had no control.

We are no longer persuaded that the second reason has validity, as an additional important purpose for the enactment of AS 04.10.180 was to hold a licensee civilly responsible for lawfully conducting the business. The unrestricted language of the statute, which provides that a licensee "is solely responsible for the lawful conduct of the business," indicates that the legislature intended this purpose. The legislature did not state that the licensee's responsibility would apply solely to criminal or administrative sanctions. "Responsible" is defined as "liable, legally accountable, or answerable. . . . Able to pay a sum for which he is or may become liable, or to discharge an obligation which he may be under." [5] The very term embodies civil concepts.

Additionally, social policy suggests that the legislature intended this purpose. Much of Alaska's crime and physical injury to persons can be traced to alcohol abuse. A licensee's liability to the public for statutory violations creates an incentive to see that the establishment is conducted lawfully so that members of the public are not harmed.[6] Although it is true that policy embodied in AS 04.10.180 can also be enforced by criminal and administrative sanctions, we see no reason for giving this statute a narrow interpretation that would preclude a private right of action for unlawful conduct.[7]

The *Barton* majority expressed the concern that it was unfair to hold a person

---

**5.** Black's Law Dictionary 1476 (Revised 4th ed. 1968).

**6.** This furthers the legislature's general purposes for creating an alcoholic beverage control board. Those purposes, as expressed in AS 04.05.030, are "to assure the proper administration of state liquor regulation in a manner

that *will protect the public health, safety and welfare.*" [Emphasis added.]

**7.** In *Vance v. United States*, 355 F.Supp. 756 (D.Alaska 1973), Judge Plummer held that a violation of AS 04.15.020 could be a basis for imposing civil liability. While the case did not deal with vicarious liability of a licensee under AS 04.10.180, there would seem to be no more

civilly liable for acts the person could not control. We now believe that it is not unfair to hold a licensee responsible for the establishment's operation even though the licensee does not have actual control of the day-to-day functions. The licensee, whether or not in actual control, derives benefits from the enterprise. The licensee is free to choose whether or not to assign those benefits and to relinquish operational control. In a business so fraught with public interests, a licensee should not be entitled to the benefits of the enterprise, yet be relieved of the responsibilities by merely contracting them away. Without approval of the Board to a transfer, there is no assurance that the purchaser will be responsible. Moreover, the licensee may secure insurance to protect against damage claims resulting from the improper conduct of the business. Insurance rates usually reflect loss ratios and create a further incentive for exercising care in a business fraught with hazards. Any extra cost may be reflected in the price of the product.[8]

Our decision in *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916 (Alaska 1977), supports our conclusion that it is equitable to hold a licensee responsible for the conduct of a business. We stated in *Sweat*:

> A scheduled common carrier . . . is given a monopoly or semi-monopoly primarily for the purpose of furnishing safe and reliable scheduled air transportation. It should not be permitted to barter away its responsibility to the traveling public by means of contracts with other carriers. If this were permissible, an air carrier could avoid liability by engaging in independent contracts for furnishing food, maintenance of its planes and conceivably even for supplying crews. Regardless of whether such contracts may be permitted

by regulatory authorities, the traveling public is entitled to look for protection to the certificated carrier responsible for the scheduled route.

568 P.2d at 926.

Alesna alleges, in part, that she was injured as a result of the unlawful service of liquor to an intoxicated person. Since we have decided that the legislature intended that the licensee assume responsibility for injuries from unlawful conduct of the business, we reverse the summary judgment granted in favor of the LeGrues.

Such a result does not conflict with our opinion in *Morris v. City of Soldotna*, 553 P.2d 474 (Alaska 1976), which concluded that the Safe Place to Work Act and the General Safety Code did not create an implied private right of action by an employee of an independent subcontractor against the general contractor and owner. Those statutes do not give a licensee a valuable franchise, nor do they expressly fix responsibility on the owner or general contractor in the manner that the statute here fixes responsibility on the licensee.

■ Nor does allowing a private right of action disturb our opinion in *Sabre Jet Room, Inc. v. K & L Distributors, Inc.*, 384 P.2d 952 (Alaska 1963), that liability for debts accrued by a corporate officer of a licensee who operated a liquor store under a lease management agreement could not be attributed to the corporate licensee solely because the corporation held the liquor license. First, the case presented a general question of commercial law that had nothing to do with the operation of the premises as a business involved in retail liquor sales. Second, no "unlawful" conduct was alleged so as to render the licensee responsible under the terms of AS 04.10.180.

---

reason to limit that section to criminal sanctions. *See also* Restatement (Second) of Torts § 287 (1965), which provides: "A provision for a penalty in a legislative enactment . . . has no effect upon liability for negligence unless the penalty is found to be intended to exclude it."

8. *See Fruit v. Schreiner*, 502 P.2d 133, 140–41 (Alaska 1972), for a discussion of the enterprise theory for imposing vicarious liability.

The judgment of the superior court is reversed in part and the case is remanded for further proceedings consistent with this opinion.[9]

REVERSED in part, and REMANDED.

CONNOR, Justice, concurring in part, dissenting in part.

I would distinguish *Barton v. Lund*, 563 P.2d 875 (Alaska 1977), in the manner argued for by appellant and would, therefore, reverse. I would not overrule *Barton*, and to that extent I dissent.

**9.** Alesna contends that the bartender was negligent in returning Peterson's car keys which had been left with the bartender for safekeeping. We do not consider whether, under a nondelegable duty theory, independent of the statutory duty created by AS 04.10.180, the licensee may be civilly liable for conduct concerning the operation of the liquor establishment which is not violative of the applicable statutes or regulations. *See Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916 (Alaska 1977). This issue was not raised below and is inadequately briefed on appeal. Hence, we will not consider it. *See L. E. Spitzer Co. v. Barron*, 581 P.2d 213, 218 (Alaska 1978); *Moran v. Holman*, 501 P.2d 769, 770 n.1 (Alaska 1972).